### 16299. GEORGIA RAILWAY & POWER COMPANY *v.* MIDDLEBROOKS.

The relation of the defendant company to the decedent, for whose homicide a recovery was sought, was not that of master, under the workmen's compensation act, the service which he was performing at the time of his death being rendered when he was in the employ of another company, and there being no payment of wages or liability for wages to him by the defendant. Payment of wages, although not necessary to render one a master, is necessary to bring one within the workmen's compensation act, which contemplates that compensation shall be fixed in proportion to the employee's wages as applied to the particular injury.

There was no reversible error in the overruling of the demurrer to the amendment to the petition, or in sustaining the demurrer to the amendment to the answer, or in overruling the motion for a new trial.

The evidence authorized the verdict.

DECIDED JUNE 12, 1925.

Damages; from Fulton superior court—Judge E. D. Thomas. February 5, 1925.

Application for certiorari was denied by the Supreme Court.

Mrs. W. P. Middlebrooks brought suit against the Georgia Railway & Power Company for the homicide of her son, alleging that he "was working for the Central Georgia Power Company" at its substation or power-house; that in pursuance of an arrangement between these two companies the defendant company erected and maintained a switch on the property of the other company for the purpose of interchanging current, by which switch "the defendant's wires could be connected with the wires of the Central Georgia Power Company at the request of said defendant;" that, "while [plaintiff's] son was in the performance of his duty as an employee of the Central Georgia Power Company, he was requested by the defendant, through one of its employees, to turn said switch hereinbefore described, and that her son, acting on the request of said defendant, undertook to turn said switch," and was killed because of a defect in it; that the defendant was negligent in maintaining the switch in an unsafe and defective condition, and that as a result of said negligence her son was killed. By amendment the plaintiff set out more in detail the negligence alleged in the petition, the defects in the switch, and alleged that the defendant was negligent in failing to have connected with the said switch a safety appliance known as a surge-arrester. A demurrer to this amendment was overruled. The defendant answered, denying negligence and liability, and by amendment to its answer set up that the decedent was subject to the workmen's compensation act, and was in the employment of the defendant at the time of his death. This amendment was allowed and ordered filed, but on oral demurrer was, by order of the court, stricken from the file, "on the ground that the same does not set forth any defense in law to plaintiff's action." The defendant excepted pendente lite to the rulings stated above. A verdict was rendered for the plaintiff, the defendant's motion for a new trial was overruled, and the defendant excepted, assigning error upon its exceptions pendente lite and upon the refusal of a new trial.

*Colquitt & Conyers,* for plaintiff in error.

*Branch & Howard,* contra.

LUKE, J. (After stating the foregoing facts.) We have considered carefully the demurrers to the amendment to the petition, and to the amendment to the answer (both subjects of the pendente

lite exceptions), and also the various grounds of the motion for a new trial. A seriatim discussion of each of these would render this decision unnecessarily voluminous. The amendment to the petition amplified and made more specific the petition and the allegations of negligence. The allegation as to the surge-arrester was material and relevant under the original pleading, this, as shown by the statement of facts, being a safety appliance. It suffices to say that the demurrer to the amendment to the petition was properly overruled; and the motion for a new trial contains no reversible error. The controlling question before us and the only one necessary for us to discuss is: Did the amendment to the defendant's answer set up a good defense in law to the action, and could the defendant, under the pleadings, be considered the master of the decedent at the time of his death?

In this case we have what, prior to the passage of the workmen's compensation act, would have been an anomalous situation, viz., the defendant seeking to be regarded as the master of the deceased who is alleged to have been negligently killed. The reason, however, is obvious. Such a relation would bring the defendant under the workmen's compensation act, thereby greatly reducing its liability, if not discharging it altogether, under the particular facts of this case. Several cases are cited in support of the proposition that the Georgia Railway & Power Company was the master of the deceased at the time of his death; some of which we will discuss briefly. In the case of *Brown* v. *Smith & Kelly,* 86 *Ga.* 274 (12 S. E. 411, 22 Am. St. Rep. 456), Smith & Kelly were the general masters of the plaintiff, and one Dixon was the man for whom the plaintiff was working when he was injured by the negligence of a driver and fellow servant, and the court held that the driver was the special servant of Dixon for that occasion. In the opinion the court said: "We have seen from the evidence above quoted that Dixon had the *exclusive right to discharge this driver and employ another in his place.* He had the right *absolutely* to control and direct the driver. *He had the right to take him from the mules and put him at other work.* In other words he had as ample and complete control over the driver as if he had originally hired him." (Italics ours.) For the hirer to become the master of a servant under circumstances such as are now under consideration, the headnote of the *Brown* case states that the hirer

(1) must have "complete control and direction" of the servant for the occasion; (2) the general master must have "no such control," or, in other words, must relinquish all control of the servant; (3) the hirer must have the "exclusive right to discharge him," (4) "and put another in his place," (5) "or put him about other work." Such are the requisites laid down in the *Brown* case, which, so far as we have been able to ascertain, has never been overruled, and is the oldest Supreme Court decision on this particular state of facts, and therefore the controlling one. It was followed by this court in *Greenberg* v. *Yarbrough, 26 Ga. App.* 544 (106 S. E. 624), and *Reaves* v. *Columbus Electric & Power Co., 32 Ga. App.* 140 (1) (122 S. E. 824). The pleadings in the instant case, when fairly and reasonably construed, show that the Georgia Railway & Power Company did not, under the rule stated above, have such authority over the deceased as to make it his master. The real truth, as shown by the entire record in the case, is that he was employed by the Central Georgia Power Company, and that that company, by virtue of its control over him, ordered him to turn the switch when requested to do so by the defendant company. It is true that mere hiring and paying by the master are not sufficient in certain instances to prevent the employee from becoming the servant of another, but in the instant case the deceased was employed by the Central Georgia Power Company, paid by that company, controlled by it and working on its land, and was subject to be discharged by it. The petition alleged that he was "working for the Central Georgia Power Company," and the industrial commission of Georgia determined that the Central Georgia Power Company was his master. Wood, in his work on Master & Servant, says that the real test is whether the servant "was subject to such person's orders and control, *and* was liable to be discharged by him for disobedience of orders or misconduct." And in Sherman & Redfield on Negligence (par. 162) it is said: "If the hirer is vested for the time with the *exclusive* right to *discharge* the servants and employ others he alone is responsible for their defaults." It will be seen from the foregoing that mere control is not sufficient to render the hirer a master. We do not think that the defendant company in the instant case had control over the deceased, but, assuming for the sake of argument that it did, there is nothing to show that it had

a right to "discharge him," or to "put him at other work," or to "put another in his place," or that the general master, the Central Georgia Power Company, had relinquished control of him, and the amendment to the answer does not set up all these essentials which are necessary to bring the case under the decision in the *Brown* case and those decisions of the Court of Appeals which are based thereon.

The Georgia Railway & Power Company paid the deceased nothing and was not liable to him for wages. While paying is not necessary to render one a master, paying is necessary to bring one within the workmen's compensation act. The entire act contemplates that the compensation of the injured employee shall be fixed in proportion to his wages as applied to the particular injury. In the case of joint employers the act provides that "such employers shall contribute to the payment of such compensation in proportion to their *wage liability* to such employee." If the defendant's contention that it was the master of the deceased were correct, the defendant would be in position to say: "I am the master, and therefore not subject to suit at common law, because I am within the workmen's compensation act; but since the Central Georgia Power Company hired and paid the deceased his wages, I have no wage liability, and am therefore immune from payment under the workmen's compensation act also, even though my negligence resulted in his death." In the case of Dale *v.* Saunders, 218 N. Y. 59 (112 N. E. 571, Ann. Cas. 1918B, 703), the court said: "Where an employer hires the services of his team and employee to another to haul sand, the employee is still working for the original employer when he is loading sand in a pit for the purpose of hauling it, and therefore is entitled to compensation from the employer." In other words, the person for whom he is temporarily working is not the master under the New York workmen's compensation act, which is similar to that of our State. Under the New York compensation act, as under our compensation act, there must be a contract of hiring and a provision for payment for services of the employee by the employer. See, in this connection, Chicago & Interurban Traction Company *v.* Industrial Commission, 282 Ill. 230 (118 N. E. 464); Moore *v.* Taylor, 97 Okl. 193 (223 Pac. 611); Skeels *v.* Hotel Co., 195

App. Div. 39 (185 N. Y. S. 665); Western Indemnity Co. *v.* Pillsbury, 172 Cal. 807 (159 Pac. 721).

In the case of *Postell* v. *Brunswick & Western R. Co.*, 112 *Ga.* 602 (37 S. E. 869), the plaintiff alleged that the Brunswick and Western Railroad Company was his master and that he was in its employ. The proof showed that the Central of Georgia Railway Company was his master and employer, and that the Brunswick & Western was the company for which he was working at the time of the injury; and it was this variance between the allegata and probata that caused the plaintiff's case to fall. In that case the plaintiff "got his pay through the Central, but any instructions they gave him at the Brunswick & Western office he had to follow," and the Supreme Court held that the Brunswick & Western was not his master, "notwithstanding the fact that he was, when injured, doing the work of the defendant company," the Brunswick & Western. As stated by the Supreme Court, the master (the original employer) "furnished him, as *its* servant, to the defendant company." So it was in the case under consideration; the Central Georgia Power Company furnished the decedent as "its" servant. There was no contractual relation between the decedent and the defendant company. The contract was between the defendant company and the Central Georgia Power Company, and under this contract the Central Georgia Power Company's servant was to turn the switch. The facts in that case and the facts in the one under consideration are quite similar, and, under the ruling in that case, the Georgia Railway & Power Company could not be considered the master in the instant case. The *Postell* case is controlling also as to the liability of the defendant company in the instant case. In that case the court said: "Relatively to the defendant company he was, while engaged in the work of coupling and uncoupling its cars, a licensee. He had the right, and it was his duty, under his contract with the Central company, to do this work for the defendant company [the Brunswick & Western], but he was employed to do it by the Central company, which furnished him, as its servant, to the defendant company for this purpose. Had he sued the defendant for injuries which he, as a licensee, received while attempting to couple cars forming a part of its train, his proof and his allegations would have corresponded, and if he showed that his injuries were caused by the defendant's

negligence, *he could have recovered.*" (Italics ours.) In the instant case the plaintiff did not make the mistake of alleging that her son was employed by the Georgia Railway & Power Company, the defendant. On the contrary she plainly alleged that "Petitioner's son was working for the Central Georgia Power Company;" and other portions of the petition and the evidence show that her son was a licensee to do this work for the defendant company, and that he was in the performance of his duty when he was killed by the negligence of the defendant company. In other words, he was not only licensed to handle the switch of the defendant, but it was his duty, under orders of his employer, the Central Georgia Power Company, to do so; and the entire record shows that the plaintiff was proceeding on the claim that her son was a licensee and was killed in the performance of his duty as such.

In the light of all the elements necessary to make the defendant company the master in the instant case, the amendment to the answer did not constitute a legal defense to the plaintiff's cause of action; and since, under the pleadings and the evidence, it could not have availed the defendant anything, its rejection by the court, even if error, was harmless. *Carolina Portland Cement Co.* v. *Zuber,* 29 *Ga. App.* 96 (113 S. E. 813).

The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*