534

37582.    ATLANTIC COMPANY *v.* MOSELEY *et al.*

Decided April 30, 1959—Rehearing denied May 12, 1959.

*Nall, Miller, Cadenhead & Dennis, B. Carl Buice, H. G. Rawls,* for plaintiff in error.

*Smith, Gardner & Kelley, B. C. Gardner, Jr., Asa D. Kelley, Jr., Burt & Burt, H. P. Burt,* contra.

Felton, Chief Judge. The uncontradicted portion of the evidence relative to the issues involved in this appeal discloses that the decedent had been a salaried employee of the Atlantic Company for some years until July, 1956, at which time he ceased to draw a fixed salary and became what is known as a "semi-peddler". In this status he was furnished a company truck in which to make deliveries, but instead of receiving a fixed salary he simply procured ice from the Atlantic Company at the rate of fifty cents per one hundred pounds and resold it to ultimate customers at a higher price. He also delivered ice to certain designated customers of the company, for which he was paid $7.00 a week.

On October 18, 1956, the company, at Moseley's request, sold to him a delivery truck for a total sale price of $509.85, payable

in installments of $60 per month beginning on November 1, 1956. The instrument by which this arrangement was consummated was in the form of a title-retention contract and had, among its other provisions, a stipulation that, "Default in making any payment when due or breach by the vendee of any part of the within agreement or supplementary terms of purchase shall authorize the [Atlantic Company] to take possession of said property immediately, without any legal process, and all payments made up to the time of default shall be applied as hire for said property and depreciation in value." Between October 18, 1956, and December 6, 1956, the company advanced to Moseley $62 for insurance on the truck and $11.46 for repairs. During this period Moseley paid a total of $47 on his truck account, leaving the balance due on the date of his death at $536.31.

Having thus obtained a delivery truck, Moseley became what is designated as a "peddler". Under this arrangement, he procured ice from the Atlantic Company at the rate of forty cents per one hundred pounds and resold it at the prevailing retail rate. Upon his return to the plant at the end of his daily deliveries, Moseley turned back his unsold ice to the company and received credit therefor.

The truck was retaken by the company immediately after Moseley's death, and sold to satisfy outstanding indebtedness.

On the basis of conflicting evidence the State Board of Workmen's Compensation found as a matter of fact that the relationship of employer and employee existed between the decedent and the Atlantic Company on the date of his death. It is well settled that a finding of fact by the board when supported by evidence or logical and proper inferences therefrom is conclusive in the absence of fraud. *Travelers Ins. Co.* v. *Reid,* 54 *Ga. App.* 13 (186 S. E. 887). There is uncontradicted evidence that as late as July, 1956, the decedent was a bona fide employee of the Atlantic Company delivering ice over a specific route. Upon his purported conversion to the status of "semi-peddler" or "peddler", the decedent continued to deliver in the same territory, and there is no showing that he was removed from company control as to his route of delivery. On the contrary, the company's local manager Stanford testified that "nothing was

536

ever discussed about his route—where he would sell ice." There is also testimony by the witness Westbrook, who operates under the "same agreement" as the decedent, that since he (Westbrook) became a "peddler" he is serving his same route and he could not service the customers of the decedent.

Westbrook further testified that as a "peddler" he is selling ice for the same price that he sold it when he was a salaried employee and that the price is set "at the plant." Although it appears that a "peddler" might be free to reduce the price below the prevailing retail rate if he desired, manager Stanford testified that such a case had "never come up", and did not state whether he would continue to sell ice to one who so reduced the price.

The testimony of Westbrook with regard to his ice truck is further evidence tending to show control by the defendant over a "peddler's" business affairs. Although legal title to the truck is in his name, the witness parks it at the company plant every night. He has never used the truck for any other business and is not even certain as to his right to use it for visiting or personal convenience. This testimony is entirely inconsistent with independent ownership, particularly where there is no showing that the witness had other means of transportation available.

The above evidence, and logical inferences therefrom, authorized the board to find that the route, price and means of transportation of the decedent "peddler" were controlled by the defendant to a sufficient degree to show a continuation of his previously existing legal status as an employee. The conclusion of the defendant's manager to the effect that the decedent was not an employee is not decisive upon that issue, but must be considered in the light of all the facts and circumstances of the case. "It is well settled that circumstantial evidence may sometimes outweigh positive testimony." *Minter* v. *Kent,* 62 *Ga. App.* 265, 272 (8 S. E. 2d 109). "It is possible for circumstantial evidence to outweigh in probative value direct testimony inconsistent therewith, although the testimony of the witness be not otherwise impeached." *Chancey* v. *Shirah,* 96 *Ga. App.* 91 (1) (99 S. E. 2d 365).

We are mindful of the principle that payment of wages, al-

though not necessary to render one a master, is necessary to bring one within the Workmen's Compensation Act, which contemplates that compensation shall be fixed in proportion to the employee's wages as applied to the particular injury. *Fidelity & Cas. Co.* v. *Windham,* 209 *Ga.* 592 (74 S. E. 2d 835) ; *Georgia Ry. & Power Co.* v. *Middlebrooks,* 34 *Ga. App.* 156 (128 S. E. 777). In the instant case, however, the board found that the decedent was paid certain amounts of money by the Atlantic Company as commission or earnings and his average weekly wage was computed on the basis of this compensation. Under the facts and circumstances of this case, we cannot say that this finding was unsupported by the evidence.

*Judgment affirmed. Townsend and Carlisle, JJ., concur. Felton, C. J., was designated to act for Gardner, P. J., who is disqualified.*