## 19118. DAVIS *v.* STARRETT BROTHERS INC.

DECIDED MARCH 6, 1929.

*G. Seals Aiken,* for plaintiff.

*Harold Hirsch, W. B. Cody,* for defendant.

LUKE, J.   Lyle C. Davis brought his action for damages against Starrett Brothers Incorporated, alleging that while working in an elevator shaft on the first floor of a certain building in Atlanta as the employee of the Tyler Company, a carpenter who was in the employ of Starrett Brothers Incorporated and was working in the shaft five floors above him negligently dropped a hammer down the shaft and it fell upon him and seriously injured him.   The defendant was alleged to be negligent because it did not place something underneath its carpenters to prevent anything from falling down the shaft and injuring him, and for various other reasons which need not be stated here.   After the plaintiff had rested his case and the defendant had submitted a part of its evidence, the defendant offered to amend its answer by pleading that the plaintiff was barred by reason of the fact he was working under the workmen's compensation act, and was, under an agreement with the Tyler Company and a named insurance carrier, which had been approved by the industrial commission, receiving $15 a week for the injuries alleged in the petition.   The plaintiff objected to the allowance of the amendment, moved to strike it, and demurred to it.   The said objection, motion to strike, and demurrer were all overruled, and the plaintiff excepted pendente lite.   The court then directed a verdict for the defendant, and a verdict was rendered accordingly.   The plaintiff's motion for a new trial as amended was overruled, and he excepted.

The motion for a new trial contains several special grounds which disclose no reversible error and warrant no special consideration.   The remainder of the special grounds are governed by the

controlling question raised by the record, which is this: Was, or was not, the Tyler Company an independent contractor? If it was, the plaintiff was entitled to go to the jury, and the direction of the verdict was error. If it was not, the direction of the verdict was proper. Before discussing the main question in the case, we deem it proper to say that the amendment to the answer was properly allowed. "All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by. The defendant after the first term can not set up new matter by way of amendment, except as provided in section 5640." Civil Code (1910), § 5681. The affidavit to the plea that "the new facts or defense were not omitted from the original answer for the purpose of delay, and the same is now filed in good faith and not for the purpose of delay," meets the requirements of the Civil Code (1910), § 5640. We hold also that the court properly overruled the demurrer to the amendment, and the motion to strike it. Attached to the amendment as "Exhibit A" was a copy of the contract between Asa G. Candler Incorporated and Starrett Brothers Incorporated, providing for the erection of a building by the latter for the former on a plot of ground on Peachtree and Ellis streets in the City of Atlanta. Starrett Brothers Incorporated was to provide labor, equipment, and materials, and erect the building according to plans and specifications, and negotiate all employment and purchases and let all subcontract work. It agreed also to provide workmen's compensation, public liability, and contingent insurance. "Exhibit B," attached to the plea, is the contract between Starrett Brothers Incorporated and the Tyler Company. This contract covers twelve pages and is too long to be set out fully here. However, since by it the relationship of the parties thereto is to be determined, and that relationship controls this case, this contract demands very careful consideration.

The salient features of the latter contract appear from the following: Starrett Brothers Incorporated is designated "Builder," and the Tyler Company "subcontractor." The contract provides: 1st. That "to the satisfaction of the Builder and the Architect," the Subcontractor shall provide all materials and perform all work

mentioned in the specifications (and addenda thereto, if any), and shown on the drawings prepared by the Architect. 2d. The Subcontractor shall abide by the general conditions in the specifications of the Architect in so far as they apply to the work. And where the contract is at variance with the plans and specifications it controls. 3d. "The Builder shall furnish the Subcontractor such further drawings or explanations as may be necessary to detail and illustrate the work to be done, and the Subcontractor shall conform to the same as part of this contract, as far as may be consistent with the original drawings and specifications. . . " "The Subcontractor shall exercise the utmost diligence to obtain the drawings and information necessary to fulfill the work herein contemplated," and "shall, from time to time, and at frequent intervals, inform the builder in writing as to what drawings or information may still be required. . . " 4th. "All workmanship and material . . shall be subject at all times to the inspection and approval of the Architect, to whom the same shall be made satisfactory within the meaning of the plans and specifications and this contract;" and the subcontractor shall provide facilities at all times for the inspection of the work by the Architect, the Builder, or the authorized representative of either or both. Within twenty-four hours after receiving written notice to that effect, the subcontractor shall proceed to remove all material condemned by the Builder as unsound or improper, and to take down all portions of the work so condemned as unsound or improper, or in any way failing to conform to the drawings and specifications, replacing same, without extra expense, with material and workmanship satisfactory to the Architect or Builder, or both. 5th. "Should the Subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or sufficient materials of the proper quality, or fail·in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Builder shall be at liberty to provide any such labor and materials, and deduct the cost thereof from any money then due or thereafter to become due the Subcontractor;" and the builder shall have the right to cancel the contract and complete the work under it, paying the subcontractor the excess, if any, of the unpaid balance due it over the expense incurred by the builder in completing the contract: if the balance

be against the subcontractor, it shall pay the builder the difference. 6th. "Should the Owner or Architect make changes in the plans and specifications which would decrease the amount of work to be performed or materials furnished under this contract, the Builder shall have the right to order curtailment in conformity therewith, and the Subcontractor shall make proper allowance to the. Builder to the value of the work and materials so omitted." 7th. An officer of the builder must sign confirming orders for any overtime, extra work, or materials furnished under any order from the Builder's job representative, to enable the subcontractor to collect for any amount in excess of that stated in the contract. 8th. This paragraph, after providing for the allowance of additional time for the completion of the work in the event delay is caused by fault of the architect or the builder, or by providential causes or strikes, stipulates that if the Builder is prevented by any strike, lockout, fire, lightning, storm, or any other cause beyond its control, from "performing any work related to the work of this Subcontractor on said building, and considers it inadvisable to receive materials therefor, then the Subcontractor shall, upon notification from the Builder, cease deliveries to and performance of any work hereunder at the building until such time as, in the option of the Builder, the conditions are such that it is advisable to resume operations on said building." If the parties can not agree as to the extension of time herein above mentioned, or if either claims damages on account of cessation of work, such matters shall be subject to arbitration, as hereinafter provided. 9th. This paragraph is not material to the question under consideration. 10th. "The Subcontractor hereby agrees to repair and make good, free of charge to the Owner and Builder, and at the convenience of either or both, any damages or fault in the building that may appear within the period after its completion as called for by the specifications, as a result of imperfect or defective work done or materials furnished by the Subcontractor, or of plant or equipment provided for hereunder, which shall not operate to the satisfaction of the Architect or Engineer, the same being certified by said Architect or Engineer as being due to one or both of all these causes." 11th. Under this paragraph the subcontractor agrees to indemnify the builder and owner for damages arising out of the negligence of its agents and employees; and also agrees to carry liability insurance and

workmen's compensation insurance. 12th. This paragraph throws no light upon the question under consideration. 13th. "The Subcontractor agrees not to sublet this contract, or any portion thereof, without the written consent of the Builder, and that in the performance of all work herein contemplated, the Subcontractor shall employ labor under conditions satisfactory to the Builder. The Subcontractor agrees to discontinue the employment on this work of any of its employees who may be unsatisfactory to the Builder." 14th. "The Builder, through its representative, shall have full and free access to the shops, factories, or other places of business of the Subcontractor, or the subcontractors of this Subcontractor, in order that it may inform itself as to the general condition and progress of the work herein contemplated." 15th. "No alteration shall be made in the work shown or described by the drawings and specifications, except upon written order signed by an officer of the Builder, and when so made, the value of the work added or omitted shall be computed, and the amount so ascertained shall be added to or deducted from the contract price." 16th. This paragraph provides for the arbitration of differences between the parties as to the value of work to be added or omitted, or as to the amount of damages resulting from the default of the subcontractor, or as to the interpretation of the contract. 17th. "If through the abandonment or modification of the work by the direction of the Owner or Architect or Engineer, the work hereunder is not required by the Builder, the Builder may terminate the employment of the Subcontractor, even though the Subcontractor may not be in default." And in such event the builder shall only be liable to the subcontractor in the proportion that such work performed and materials prepared bears to the total amount of the contract, plus a reasonable profit to the subcontractor: The amount to be paid the subcontractor to be submitted to arbitration, if it is not agreed on by the parties. 18th. The subcontractor is to deliver the work and materials free from all liens, etc. 19th. If the materials called for under the contract are not promptly delivered in accordance therewith, "the Builder shall have the right to investigate the cause of said delay and expedite deliveries; and if the Subcontractor be in default, the cost of such expediting may be charged against the Subcontractor." 20th. This paragraph throws no light upon the question under consideration. 21st. When the

builder requests the subcontractor so to do, it shall work overtime, and shall be remunerated by the builder as set out in the contract. If the subcontractor, "in the opinion of the Builder, delays the progress of the work necessary to complete the building, then, if requested in writing by the Builder, the Subcontractor shall employ such overtime as may be necessary to keep up with the progress of the work; and the cost incurred by the use of said overtime shall be borne entirely by the Subcontractor." 22d. "Should the Builder, during the execution of this contract, require the Subcontractor to perform any additional work under this contract (except overtime), upon the basis of the cost of labor and material," the subcontractor shall do so, and shall be paid therefor the cost of labor and material, plus ten per cent. for overhead, plus an additional ten per cent. for profit, etc. 23d. This paragraph sets out the price to be paid for the work and the time and manner of payment, and sets out other matters not necessary to be stated here. 24th. This paragraph sets out that time is of the essence of the contract, and that it is to be completed on or before February 1, 1927. 25th. "The drawings and specifications referred to herein are the following: All the Architect's (and/or Engineer's) drawings, specifications, and addendum No. I thereto, including all general conditions." 26th. This paragraph names the parties and architects, states what the contract covers, and specifies some of the material to be used. 27th. "No assignment of this contract or any money due, or which may become due hereunder, shall be made without written consent of the Builder." It is provided on the back of the contract that all questions in dispute be submitted to arbitration, and that the general procedure as to arbitration shall conform to the laws of this State.

We are aware that the jury might have concluded from some of the testimony that Starrett Brothers Incorporated did not attempt to exercise authority over the work being done by the Tyler Company. This, however, is not decisive of the issue. The question is whether or not the builder *retained the right* to direct and control the work. Under the contract the builder could detail the manner in which the work was to be done by furnishing additional plans and specifications. It could increase the work or reduce it. It could, in certain instances, have the work stopped and recommenced at its pleasure. It could determine that there were not enough

skilled workmen on the job and put more on it. It could cause the subcontractor to discharge any of its employees who were not satisfactory to the builder. It could terminate the contract and do the work itself. The contract was so shaped that the builder could exercise extensive and intimate authority over the doing of the work, and we are of the opinion that the Tyler Company was not an independent contractor. We quote from the case of *U. S. Fidelity &c. Co.* v. *Corbett,* 31 *Ga. App.* 9 (119 S. E. 921) : It has been said that "The relation of master and servant exists whenever the employer retains the right to direct the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done." Singer Mfg. Co. *v.* Rahn, 132 U. S. 518 (10 Sup. Ct. 175, 33 L. ed. 440) ; 26 Cyc. 966. It was stated in *Lampton* v. *Cedartown Co.,* 6 *Ga. App.* 149 (64 S. E. 495), that "independence of control in employing workmen and in selecting the means of doing the work is the test usually applied by the courts to determine whether a contractor is an independent one or not; and this is the test applied by the statute of this State, supra." That statute is section 4414 of the Civil Code (1910), which is as follows: "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and is not subject to the immediate direction and control of the employer; and see § 4415." We next quote from 14 R. C. L. 71, § 8, the rule cited approvingly in the *Corbett* case, supra: "The control of the work reserved in the employer which makes the employee a mere servant is a control not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work, but not as to the means or manner of accomplishment, he is an independent contractor." In the case of *Maryland Casualty Co.* v. *Radney,* 37 *Ga. App.* 286 (139 S. E. 832), this court approved this rule: "The true test in determining whether one is engaged as a servant or occupies the status of an independent contractor ordinarily lies in the answer to the question whether or not the work is to be done according to the workman's own methods, without being subject to the employer's control except as to results to be obtained." See also *Zurich General Accident & Liability Co.* v. *Lee,* 36 *Ga. App.* 248 (136 S. E. 173) ; *Ocean Accident & Guarantee Corporation* v. *Hodges,* 34 *Ga. App.* 587 (130 S. E. 214).

Construing the contract between the parties in the light of the law, the Tyler Company was not an independent contractor, and the court did not err in so holding and in directing the verdict for the defendant. No reversible error appears in the record, and the judgment of the trial court is affirmed.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*