31485. MARYLAND CASUALTY CO. *et al. v.* STEWART.

DECIDED FEBRUARY 28, 1947.

*T. Elton Drake,* for plaintiffs in error. *Booth & Preston,* contra.

PARKER, J. The controlling question here is whether the relationship between the main defendant and the claimant was that of employer and employee, or whether the claimant was the em-

841

ployee of an independent contractor and not the employee of the defendant. In other words, if Thomas was merely an employee of Clifton, the claimant who was hired by Thomas was likewise an employee of Clifton and entitled to compensation; but if Thomas was an independent contractor, the claimant was not the employee of the defendant Clifton and was not entitled to compensation. "Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Yearwood v. Peabody*, 45 *Ga. App.* 451 (2) (164 S. E. 901). It appears in this case: that the defendant-employer was a contractor engaged in the erection of a rural electric-power line, and that he hired the claimant's employer, who was in the business of hauling with trucks for hire, to deliver about 50 poles at the location where the line was being erected, and that the defendant, with full knowledge that the claimant had been engaged as a helper, accompanied the claimant's employer and the claimant, who drove the two trucks belonging to the employer, on the delivery of the poles, and rode along the route ahead of them, showing and pointing out to the claimant and to his employer the exact points where the poles were to be put off the trucks; that the defendant designated which of the poles on the trucks was to be left at each location; and that the defendant was present at all times and directing the work of the claimant and his employer in the manner set out, when the claimant was injured while unloading a pole from a truck at a place designated by the defendant.

The finding of the State Board of Workmen's Compensation, confirming the finding of the single director, that the defendant-employer directed the time, place, and manner in which the work was to be done, and that the claimant was an employee of the defendant and not an employee of an independent contractor, was supported by the evidence, irrespective of the testimony objected to as conclusions; and the superior court did not err in sustaining the award in favor of the claimant and in dismissing the

appeal. *Hockmuth* v. *Perkins,* 55 *Ga. App.* 649 (191 S. E. 156) ; *Durham Land Co.* v. *Kilgore,* 56 *Ga. App.* 785 (194 S. E. 49) ; *Continental Casualty Co.* v. *Payne,* 56 *Ga. App.* 873 (194 S. E. 428) ; *American Mutual Liability Ins. Co.* v. *Harris,* 61 *Ga. App.* 319 (6 S. E. 2d, 168) ; *Hartford Accident &c. Co.* v. *Davis,* 73 *Ga. App.* 10 (1) (35 S. E. 2d, 521).

*Judgment affirmed. Sutton, P. J., concurs, and Felton, J., concurs specially.*

FELTON, J., concurring specially. The evidence was conflicting as to whether, under the terms of the oral agreement, the defendant Clifton had the right under the employment, taking into consideration the circumstances and situation of the parties, and the work, to control and direct the intermediate contractor Thomas in his work; and the evidence was also conflicting as to whether or not Clifton did in fact control the time, manner, and method of executing the undertaking to transport the poles to the site of the power line which was being constructed. The evidence is indecisive whether Clifton employed Thomas to do a general job of hauling poles and equipment for the construction of the power line, or whether it was contemplated that Thomas would haul only the two trucks loads involved on the day when the claimant Stewart, an employee of Thomas, was injured. This conflict is obvious from the following questions posed to and answered by Thomas: "Q. So the picture on the whole is this: that at the time you hauled these poles the power line for the Excelsior Corporation was already under construction, was being built, and there were two truck loads of poles at Metter, Georgia, and Mr. Clifton came to you and asked you to haul these two truck loads of poles to designated places, isn't that the substance of it? A. That is right. Q. Was he [Clifton] engaged in building some REA lines connecting with the central office, what they call the Excelsior REA line connecting at Metter, that line was extended? A. Yes, sir. Q. Did he have the general contract for the construction of that line? A. To the best of my knowledge that is what it was, yes, sir. Q. Did he [Clifton] engage you to use your trucks and haul some poles out on the line? A. Yes, sir. Q. Did you contract to haul any specified number of poles? A. No, sir. Q. Didn't he tell you there were certain places that he would have to have certain designated poles due to the outlay of the line, he

told you he was going to have to have certain poles? A. Yes, sir, to make angles and brace poles. *I didn't know that until we got over there.* Q. Well, now go on from there and explain what happened. A. Well, when Clifton parked his truck and we rolled the poles off at each place, a certain pole was supposed to be at each spot. We would put one off and drive on up to the next one. Mr. Clifton would pick out, find a place and show us what pole and we got down to what was on the floor of the truck, the bed in other words. We had little oak stubs cut for stakes, we had little stakes; and we wanted the particular pole that was on the outside of this spot, and we drove up there and Mr. Clifton said, 'I want this one; no, I think it is the one in the middle;' and I says, 'Here is one right on the side here just like it, why not get this one?' He said, 'All right, that is just like the one over there.'" The foregoing are excerpts from both the direct and cross-examinations and do not purport to be a running account of Thomas' testimony. At other points on direct examination, Thomas was asked the following questions and made the following replies, which were objected to as conclusions: "Q. In doing this work did you do it just as Arthur Clifton instructed you to do the hauling, unloading, and loading? A. Yes, sir. Q. Was he there personally directing it all the time. A. Yes, sir. Q. Did he have control over the manner and method of loading and unloading, hauling where you would deliver them? A. Yes, sir, that is true."

The single director found as a matter of fact that Thomas was an employee of Clifton, and therefore the claimant Stewart was an employee of Clifton and entitled under the facts of the case to compensation for the loss of time and for the loss of his leg as a result of one of the poles falling on and crushing his leg. In view of the testimony which is set forth above. I think that there is sufficient evidence to sustain the finding of the single director, notwithstanding the introduction of the "conclusions" of Thomas, which, under the ruling in *Davis* v. *Menefee,* 34 *Ga. App.* 813 (2) (131 S. E. 527), is not a ground for reversal under the Workmen's Compensation Act. The instant case is analogous in many respects to that of *Swift & Co.* v. *Alston,* 48 *Ga. App.* 649 (173 S. E. 741), q. v.