33476. ST. PAUL-MERCURY INDEMNITY CO. *et al.* v. ALEXANDER *et al.*

Decided May 25, 1951. Rehearing denied June 22, 1951.

*Currie & McGhee,* for plaintiffs in error.
*Willingham, Cheney, Hicks & Edwards,* contra.

Sutton, C. J. John S. Alexander filed with the State Board of Workmen's Compensation a claim for compensation for an accidental injury arising out of and in the course of his employment, against Harris G. Self, who was not insured at the time of the accident, and against W. L. Florence Construction Company and its insurer, the St. Paul-Mercury Indemnity Company. At the first hearing before a director of the Board, neither Alexander nor Self was represented by counsel. They stipulated that Alexander was an employee of Self at the time

of the accident, which arose out of and in the course of his employment; that he was thereby temporarily totally disabled; that he was earning $40 per week; and that Self, who was subject to the jurisdiction of the Board and the terms of the act, was a subcontractor under Florence Construction Company.

On motion of counsel for Self, a second hearing before a deputy director was held, to take additional testimony on the relationship between Self and Florence Construction Company. The director who held the first hearing later made an award of compensation based on the following finding: "I therefore find as a matter of fact and conclude as a matter of law that the said John S. Alexander, injured employee, within the meaning and terms of the Workmen's Compensation Act, was an employee of the W. L. Florence Construction Company, principal contractor, as was the said Harris G. Self and all other employees of the said Harris G. Self, admitted subcontractor, and that the said W. L. Florence Construction Company, principal contractor, is liable to the said John S. Alexander for the benefits he is entitled to under the Workmen's Compensation Act." Accordingly, an award was made in favor of Alexander against the Florence Construction Company and the St. Paul-Mercury Indemnity Company for compensation at the rate of $20 per week for a period not to exceed 350 weeks from June 26, 1950, or until a change in condition or maximum improvement has been reached.

On appeal to the full Board, this award was affirmed, and on appeal to the Superior Court of Cobb County, the award of the full Board was affirmed. To this judgment, Florence Construction Company and its insurer except.

1. The controversy here is not over the facts, but is as to conclusions or findings based thereon. The question is, was the claimant an employee of the Florence Construction Company within the terms of the Workmen's Compensation Act at the time of his injury? The following facts may be gathered from the evidence before the Board: Florence Construction Company had contracted with the State to construct a part of a new highway in Cobb County, and made a verbal arrangement with Self for him to furnish as many trucks and drivers as were necessary, according to the construction company's de-

termination, to haul sub-grade treatment, or rock and binder, from the places where the construction company's equipment would load the trucks to the places on the grade of the highway under construction where Florence's employees would direct that the rock be dumped. Self owned ten trucks; the claimant and the other drivers of these trucks were hired by Self, who also hired drivers with their own trucks, if and when the Florence Construction Company required him to do so. Self was paid a certain amount for each cubic yard of rock per mile hauled by his own trucks, and Self paid the drivers of his own trucks. Self also turned in the time of those who drove their own trucks, and these drivers were paid directly by the construction company. Self hired the drivers for his trucks and also hired those driving their own trucks, but the evidence indicates that the construction company had the right to require Self to get rid of the drivers if they were not satisfactory or drank liquor on the job. On this point, Ralph Bowen, the engineer in charge of the project for the construction company, testified, "He [Self] was to furnish what trucks were necessary and he hired his own men and we had no control over them, at least had nothing to do with the hiring and firing as long as they gave satisfaction, not doing anything that would require running them off the job or something like that." On examination by his counsel, Self testified as follows: "Q. Did W. L. Florence Construction Company through any of its employees exercise any control over hiring or firing of these drivers? A. He didn't over hiring; he didn't directly over firing. He did tell me that he didn't allow any drinking himself and recommended that I wouldn't have anybody that would drink. Q. Well, did you have anybody that drank on the job? A. One time we had an instance, and that was when a ticket man and two of the drivers got to drinking and all three got gone. . . Q. Did Florence tell you or suggest to you that the two drivers be fired? A. He told me that they thought that we could do without them, that we could get along a lot better without them. Q. Who told you that? A. Harold Jackson. Q. The superintendent of the job? A. Yes, sir."

Self usually drove one of his trucks, and when one of them would break down, he would take it to be repaired. The con-

struction company did not tell the drivers how to operate their trucks, other than to place them for loading and dumping, but the drivers were not supposed to cease operating unless their trucks broke down. The hours when the trucks could haul the rock coincided with the time when Florence Construction Company's employees were working on the loading equipment and on the grade of the highway. The construction company's employees loading the trucks let the drivers know when they would not have time to obtain another load before the lunch period or quitting time daily, and the company's agents told Self whether or not operations would be stopped because of bad weather.

It was ruled in *Cooper* v. *Dixie Construction Co.*, 45 *Ga. App.* 420 (1) (165 S. E. 152): "Where, under a contract between an employer and a contractor for the doing of certain work, the employer retains the right to direct or control the time and manner of executing the work to be done thereunder, the relation of master and servant exists, and not the relation of employer and independent contractor." The test to be applied in determining whether the relationship of the parties is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Yearwood* v. *Peabody*, 45 *Ga. App.* 451 (2) (164 S. E. 901), and cases therein cited.

We think the Board was authorized to find from the evidence that Self was an employee of the Florence Construction Company, and not an independent contractor, and that the claimant, the driver of one of Self's trucks, was also an employee of the construction company at the time he was injured. The facts that Self and the drivers of his trucks could work, under the terms of the arrangement, only when Florence Construction Company's other employees were working and were not supposed to stop working unless a truck broke down; that the construction company had the right to direct Self to get rid of his drivers if they were unsatisfactory; that the company could require Self to put more trucks and drivers on the job or to take

them off; that only service rather than some definite result was required; and that the type and nature of the work was such as might ordinarily have been done by the construction company's own employees as a part of its business, all tend to show that the Florence Construction Company had the right to regulate and control the operation of the trucks owned and furnished by Self in hauling the rock and binder for the highway construction job. As stated in *Davis* v. *Starrett*, 39 *Ga. App.* 422, 427 (147 S. E. 530), "The question is whether or not the builder *retained the right* to direct and control the work. Under the contract the builder could detail the manner in which the work was to be done by furnishing additional plans and specifications. It could increase the work or reduce it. It could, in certain instances, have the work stopped and recommenced at its pleasure. It could determine that there were not enough skilled workmen on the job and put more on it. It could cause the subcontractor to discharge any of its employees who were not satisfactory to the builder. It could terminate the contract and do the work itself. The contract was so shaped that the builder could exercise extensive and intimate authority over the doing of the work, and we are of the opinion that the Tyler Company was not an independent contractor." In *Blair* v. *Smith*, 201 *Ga.* 747, 750 (41 S. E. 2d, 133), it was said that in the case of *Davis* v. *Starrett*, supra, "the contract provided that the builder or general contractor could add to, or take from, the work to be performed without consulting the other party, and retained to the employer an absolute right to impose his will in lieu of contractual provisions as to the work to be performed. . ." Also see, in this connection, *Swift & Co.* v. *Alston*, 48 *Ga. App.* 649 (173 S. E. 741); *American Mut. Liability Ins. Co.* v. *Harris*, 61 *Ga. App.* 319 (6 S. E. 2d, 168); *Liberty Mut. Ins. Co.* v. *Kinsey*, 65 *Ga. App.* 433 (16 S. E. 2d, 179); *Maryland Casualty Co.* v. *Stewart*, 74 *Ga. App.* 839 (41 S. E. 2d, 658).

There was no written contract between Self and the Florence Construction Company, and the terms of the verbal understanding are rather indefinite. However, the conduct of the parties, as disclosed by the evidence, shows that their arrangement or contract was substantially similar to the contract in *Davis* v. *Starrett*, supra. It does not appear that any definite amount

of rock was to be hauled by Self's trucks. He was only to haul as much rock as the construction company determined he should haul, receiving compensation for each unit per mile hauled, and the construction company could and did require him to put on additional trucks and drivers, who were paid directly by the construction company and not through Self. As stated above, we think the Board was authorized to find from the evidence that the contract between Self and the construction company was one of employment, and that Self and the claimant were employees of the Florence Construction Company at the time the claimant· was injured.

The construction company and its insurer contend that since Self admitted that he .was a subcontractor under the construction company, the claimant must first exhaust his remedies against Self, his immediate employer, as required by the Code, § 114-112. This contention is answered by the case of *United States Fidelity &c. Co.* v. *Stapleton,* 37 *Ga. App.* 707 (141 S. E. 506), in which this court stated the distinction between a general and a special employer, and held, independently of the above section of the Code, that the special employer was liable to the claimant without the claimant being required to first institute his claim against the general employer. Also, see *Liberty Mut. Ins. Co.* v. *Kinsey,* 65 *Ga. App.* 433 (supra).

2. It follows that the superior court did not err in affirming the finding and award of the State Board of Workmen's Compensation.

Pursuant to the act of 1945 (Ga. L. 1945, p. 232, Code (Ann. Supp.), § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. MacIntyre, P.J., Gardner, Townsend and Worrill, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. The claimant in this case was employed by Harris G. Self and operated one of Self's trucks. Self paid him his wages, deducted Federal income taxes and social security payments. It is not necessary to decide what was the status of truck drivers obtained by Self who owned their own trucks and who were paid directly by Florence Construction Company, as the claimant was not such a person.

There was no express contract between Self and Florence Construction Company definitely spelling out the exact rights and duties of the parties, so the answer to the question presented lies in what was actually done under the contract. What the parties thought the contract was, is of no relevancy. It is the legal consequence attaching that matters and not what the parties concluded. Self thought he was an independent contractor and that he had workmen's compensation insurance. Florence thought Self was an employee and insured itself against damage caused by Self's trucks. If we look to such terms of the contract as there were and see what was actually done thereunder, we should conclude that Self was an independent contractor insofar as the operation with his own trucks was concerned. The evidence quoted in the opinion as to the court's conclusions as to Florence's right to discharge unsatisfactory employees and drunk employees does not to my mind authorize the conclusion reached. In the first place, the statements were simply conclusions of the witnesses. There is no testimony in the record as I interpret it to the effect that Florence had the right to discharge a man who drove one of Self's trucks. Self's testimony shows that in actual cases of drunkenness Florence did no more than advise what should be done. Florence's engineer simply testified that if a driver got too drunk or disorderly, Florence could run him off the job. Any proprietor or principal contractor could do that without becoming the employer of the person so disciplined. I think that under the facts in the record Self was an independent contractor and the claimant's employer. The majority opinion contains several arguments why the Board's finding was correct. Several of these arguments to my mind are not valid, logical or relevant. The fact that a different situation might have existed as to men who owned their own trucks has no bearing on the status of the drivers of Self's own trucks. The same is true as to the fact that the time of work of the claimant and others similarly situated coincided with the working time of Florence's employees who loaded the trucks and directed the placing of the material. The control of time, as contemplated by law, is not the control of time stipulated by the contract between the principal contractor and the sub-independent contractor. In this case it was necessarily under-

214

stood between Florence and Self that Self could only get his trucks loaded when Florence's men were working and that Self's employees would be directed as to where to dump the loads.