**Rose HARRIS, Plaintiff,**

v.

**CITY OF CHATTANOOGA, TENNESSEE d/b/a Electric Power Board, C & I Specialty Co., Inc., Hildebrand & Adair, Defendants.**

**Civ. A. No. C79–92R.**

United States District Court,
N. D. Georgia,
Rome Division.

Dec. 16, 1980.

---

Harry Weill, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., James S. Kilpatrick, Covington, Kilpatrick, Storey, Covington & Durham, Rome, Ga., for plaintiff.

Robert M. Brinson, Brinson, Askew & Berry, Rome, Ga., for City of Chattanooga.

William E. Davidson, Smith, Shaw, Maddox, Davidson & Graham, Rome, Ga., for Hildebrand & Adair.

David A. Handley and Jonathan H. Waller, Gambrell, Russell & Forbes, Atlanta, Ga., for C & I.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a wrongful death action arising out of the death of plaintiff's husband while he was engaged in a construction project in Rossville, Georgia. The deceased, Will Andy Harris, Sr., was electrocuted while dismantling a scaffolding. Defendant City of Chattanooga maintained the high voltage power lines; defendant Hildebrand & Adair was the architectural firm on the project; defendant C & I was the general contractor. The deceased was employed by a masonry subcontractor, Painter & Varnell, which is no longer a party to this action. Defendant Hildebrand & Adair's motion for summary judgment was granted by this Court on September 29, 1980. Defendant C & I's motion for summary judgment is now before the Court.

Defendant's motion for summary judgment is predicated on (1) an immunity to liability generated by the Workmen's Compensation Act, Ga.Code, § 114–103; and (2) the negligence of the plaintiff alleged to be of sufficient magnitude to bar recovery.

## I

### IMMUNITY FROM SUIT

Ga.Code § 114–103 provides in pertinent part,

The rights and the remedies herein granted to an employee shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service or death: Provided, however, that no employee shall be deprived of any right to bring an action against any third-party tortfeasor ...

C & I argues that Painter & Varnell (hereinafter "P & V") was in a master-servant relationship with C & I; consequently, the deceased was a servant of C & I, and the Workmen's Compensation Act bars any recovery in tort against such an employer. The sole question is whether C & I and P & V were in a master-servant relationship. If not, then P & V was an independent contractor, and the claim against C & I, a third-party tortfeasor, would not be foreclosed by § 114–103.

Jurisdiction of this case arises from 28 U.S.C. § 1332. The Court is bound by Georgia substantive law in reaching its decision. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There is confusion in the reported decisions in Georgia about how to determine whether an employee is a servant or an independent contractor. The chaos does not permit a simple summation of the criteria to be considered. Indeed, the cases frustrate any effort at formulating a comprehensive rule, and can be characterized most accurately as a body of cacophonous case law. To ven-

ture an analysis of the Georgia law—as this Court must under the *Erie* doctrine—would tax the most imaginative student. Each case is a Siren, luring the unwary student into a maelstrom of inconsistencies. To navigate this body of law, the Court utilizes as its lodestar the concept of control; the *right* to control, not necessarily the exercise of that right.

The Georgia courts recognize the difficulties confronting any court faced with this question. *Hodges v. Doctors Hospital*, 141 Ga.App. 649, 651, 234 S.E.2d 116 (1977) ("In ascertaining what relation exists, the requirements are neither complex nor uncertain, but their application is extremely difficult."); *Bentley v. Jones*, 48 Ga.App. 587, 589, 173 S.E. 737 (1934) ("The books teem with discussion of the difference between independent contractors and servants."); *Traveler's Ins. Co. v. Moates*, 102 Ga.App. 778, 780, 117 S.E.2d 924 (1960) ("In claims for compensation under the Workmen's Compensation Act, where the question is whether the injured person, or the person under whom he was working, occupied the relation of an employee or of an independent contractor toward the alleged employer, the line of demarkation is often so close that each case must be determined upon its own particular facts."). Certain aspects of the law, however, are clear. First, in determining whether or not the relationship of master and servant prevails in a compensation case, the same principles that exist under the common law obtain. *Fidelity & Cas. Co. of N. Y. v. Windham*, 209 Ga. 592, 593, 74 S.E.2d 835 (1953). Second, consideration must be given to the contract as a whole, with no special emphasis to be afforded any particular provision. *Blair v. Smith*, 201 Ga. 747, 751, 41 S.E.2d 133 (1947); *Buffalo Forge Co. v. Southern Ry. Co.*, 43 Ga.App. 445,

449, 159 S.E. 301 (1931). Third, the question is characterized properly as one of fact, rather than law. *American Fire & Cas. Co. v. Davidson*, 116 Ga.App. 255(1), 157 S.E.2d 55 (1967); *Smith v. Poteet*, 127 Ga.App. 735, 738, 195 S.E.2d 213 (1972).[1]

Fourth, the Georgia courts invariably formulate the issue in the following way:

Whether the contract gives, or the employer assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in corformity to the contract.

*Blair v. Smith*, 201 Ga. 747, 748, 41 S.E.2d 133 (1947); *Forte v. Lewis*, 241 Ga. 109, 110, 243 S.E.2d 38 (1978); *Yearwood v. Peabody*, 45 Ga.App. 451, 164 S.E. 901 (1932). Variations of, or elaborations on, that standard phraseology are rare, and for the most part, of little help. *E. g., Bentley v. Jones*, 48 Ga.App. 587, 590, 173 S.E. 737 (1934) ("An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be performed."). One successful effort to explicate further the test was in *Employer's Mutual Liability Ins. Co. of Wausau v. Johnson*, 104 Ga.App. 617, 620, 122 S.E.2d 308 (1961), where the Court explained,

The right to control the time of doing the job means the right to control the hours of work. The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he should use and procedures he shall follow.

A wide variety of indicia of control, or lack of control, have been scrutinized by Georgia courts. The application of these criteria, however, has not always been consistent.

---

1. In its brief, C & I points to language in *Blair v. Smith*, 201 Ga. 747, 751, 41 S.E.2d 133 (1947), which indicates that the question is one of law, rather than fact. *Blair* stated that the construction of a contract always involves a question of law, and cited Ga.Code § 20–701. However, it is equally clear that any ambiguities in a contract must be resolved by a jury,

and present questions of fact. *See e. g., Williams v. McCoy Lumber Indust. Inc.*, 146 Ga. App. 380, 383, 246 S.E.2d 410 (1978). Although decided by the Court of Appeals, the decisions in *Davidson* and *Poteet*, being of more recent vintage than *Blair*, are more persuasive.

1. *The right of the employer to make additional plans and specifications; to impose his will in lieu of contractual provisions; and to direct the work step-by-step.*

In *Davis v. Starrett Brothers, Inc.*, 39 Ga.App. 422, 147 S.E. 530 (1929), the Court relied on the employer's right to alter unilaterally the plans and specifications, as proof that the relationship was master/servant rather than independent contractor. In *Blair v. Smith*, 201 Ga. 747, 41 S.E.2d 133 (1947), the Court examined a similar contractual provision, but emphasized that the contract in *Blair* required agreement between the contractor and subcontractor before a change in specifications would be permitted. In *Starrett*, the Court concluded that the employee was a servant; in *Blair*, the Court concluded that the employee was an independent contractor.

In *Employer's Mutual Liability Ins. Co. of Wausau v. Johnson*, 104 Ga.App. 617, 619–20, 122 S.E.2d 308 (1961), the Court decided that "the right to change the work," is "thoroughly consistent with the existence of the relationship of employer and independent contractor." But in *St. Paul-Mercury Indem. Co. v. Alexander*, 84 Ga.App. 207, 65 S.E.2d 694 (1951), the Court relied on the employer's right to "add to, or take from, the work to be performed without consulting the other party" as strong evidence that the employee was a servant.

In *Cooper v. Dixie Const. Co.*, 45 Ga.App. 420, 165 S.E. 152 (1932), the Court considered a contract which permitted the employer to order the employee to change certain work. The Court concluded that the employee was an independent contractor. But in *American Automobile Ins. Co. v. Tanner*, 97 Ga.App. 122, 101 S.E.2d 875 (1958) the Court decided that if the employer has the right to give daily orders to the employee, then the employee is a servant.

In *Louisville & Nashville R.R. v. Hughes*, 134 Ga. 75, 67 S.E. 542 (1909), the contract contained the following clause,

The work under this contract shall at every stage of its progress—from beginning to end—be subject to the direction, inspection, and acceptance of the [employer], who shall determine what in any case is a fair construction of the contract and what such construction requires to be done by either party.

The Court concluded that the employee was an independent contractor. But in *Old Republic Ins. Co. v. Pruitt*, 95 Ga.App. 235, 97 S.E.2d 521 (1957), the Court held,

The only reasonable construction that can be placed on the contract provision that the claimant would "carry out and complete" the construction "as" and "when" directed by ... the construction chief of the [employer] .... is that the [employer] thought its construction chief could control the time and manner of the claimant's performance of the contract.

*id.* at 236, 97 S.E.2d 521. The employee was found to be a servant.

The Georgia Courts have also seesawed on the proper evaluation of the relationship when the employer continuously "points out" the work to be performed by the employee. The following cases illustrate the confusion. In *Liberty Lumber Co. v. Silas*, 49 Ga.App. 262, 175 S.E. 265 (1934), the employer directed which trees were to be cut by the employee. Despite the fact that almost every other aspect of the relationship pointed towards an independent contractor arrangement, the Court concluded that the evidence (directing which trees should be cut) supported a finding of master/servant. In *Cooper v. Dixie Construction Co.*, 45 Ga.App. 420, 165 S.E. 152 (1932), the employer retained the right to indicate which trees were to be cleared by the employee, and, despite other strong indications that the employee was a servant, the Court found the employee to be an independent contractor. In *Maryland Cas. Co. v. Stewart*, 74 Ga.App. 839, 41 S.E.2d 658 (1947), the employer pointed out which logs were to be removed from a truck. This was sufficient evidence to brand the employee a servant. In *Bentley v. Jones*, 48 Ga.App. 587, 173 S.E. 737 (1934), the employer "showed where the timber was and what kind he wanted cut, and also gave [the employee] instructions as to the dimensions

the lumber was to be sawed." The employee, however, was an independent contractor. Finally, in *Lokey & Simpson v. Hightower*, 57 Ga.App. 577, 196 S.E. 210 (1938), the employer directed which trees were to be cut, and in what length. No other evidence of control was offered. Yet the employee was found to be a servant.

■ In the contract between C & I and P & V, there is the following provision,

> The Subcontractor shall make any and all changes in the work from the drawings and specifications of the contract documents without invalidating this subcontract when specifically ordered to do so in writing by the contractor. The Subcontractor, prior to the commencement of such changed or revised work, shall submit promptly to the Contractor written copies of the cost or credit proposal for such revised Work in a manner consistent with the Contract Documents.

Article 11.13 of Subcontract. The defendant argues that the first sentence of this clause is sufficient to find the subcontractor to be a servant. The foregoing review of cases which treated the employer's authority to change or otherwise direct the employee's work, does not support defendant's position.

2. *Contracts to perform a service rather than to accomplish a task.*

Closely parallel to the previous consideration is the dichotomy recognized by Georgia Courts between contracts to perform a service and contracts to accomplish, or complete, a task. In *Traveler's Insurance Co. v. Moates*, 102 Ga.App. 778, 117 S.E.2d 924 (1960), the Court explained this rule:

> Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor ... In order for one to be an independent contractor so as

to be outside the protection of the Workmen's Compensation Act, the contract of employment must itself be one, which contemplates a definite beginning, continuance, and ending.

*id.* at 781–82, 117 S.E.2d 924. *Accord, Mitchem v. Shearman Concrete Pipe Co.*, 45 Ga.App. 809(1), 165 S.E. 889 (1932); *Swift & Co. v. Alston*, 48 Ga.App. 649, 651, 173 S.E. 741 (1933).

Along a similar vein, in *Cash v. American Sur. Co.*, 101 Ga.App. 379, 114 S.E.2d 57 (1960), the Court emphasized the difference between,

> [A] contract to build or repair some specific thing, as distinguished from a contract of employment where the employee works at building or repairing that thing.

*id.* at 382, 114 S.E.2d 57. *Cf. St. Paul-Mercury Indem. Co. v. Alexander*, 84 Ga.App. 207, 65 S.E.2d 694 (1951).

Certainly, in the case at bar, the subcontractor, P & V, was not performing a continuing service, but rather, was engaged to achieve a particular goal—the masonry work at one construction project. This factor strongly counters C & I's argument that P & V was a servant.

3. *Controlling time.*

In *Louisville & Nashville R.R. v. Hughes*, 134 Ga. 75, 67 S.E. 542 (1909), a contractual provision which empowered the contractor to "hasten" the subcontractor's work was considered to be relatively inconsequential, and the employee was found to be an independent contractor. But in *American Automobile Ins. Co. v. Tanner*, 97 Ga.App. 122, 101 S.E.2d 875 (1958), the employer's ability to dictate to the employee that a particular task was a "rush job" was held to be compelling evidence that the employee was a servant. In *Cooper, supra*, the employee's "daily average output" had to satisfy the employer who conclusively determined whether he was satisfied. The employee was also required to work diligently. Nevertheless, the Court concluded that the employee was an independent contractor.

In *Maryland Cas. Co. v. Radney*, 37 Ga. App. 286, 139 S.E. 832 (1927), the employee worked hours that suited him, and the Court emphasized that factor in finding the employee to be an independent contractor. But in *Lockey & Simpson v. Hightower*, 57 Ga.App. 577, 196 S.E. 210 (1938) the Court decided that the fact that the employee did not work regular hours was inconsequential, and found him to be a servant.

The contract reviewed in *Pruitt, supra*, as already described, authorized the employer to direct the employee as to "when" certain work would be performed. This factor compelled a finding that the employee was a servant. But in *Morris v. Constitution Publishing Co.*, 84 Ga.App. 816, 67 S.E.2d 407 (1951), the fact that the employee had to accomplish his task by a specific time every day did not deter the Court from finding him to be a servant.

■ In the case at bar, the contracts do not evidence any control by C & I over the time of P & V's work. The defendant points to a directive from C & I to P & V which prescribed the time at which coffee breaks could be taken during the day. Certainly this does not suffice to overcome the absence of any contractual provision dictating when the work must be done, what the daily activities will be, and even how many hours the employees must work per day. This factor, despite inconsistencies in Georgia law, also compels a finding that P & V was an independent contractor and not a servant.

### 4. *Inspection.*

In *Blair, supra*, the Court considered a clause which authorized the employer to inspect the employee's work. The Court concluded that the clause was not "inserted for the purpose of controlling the contractor in his methods, but for the purpose of permitting the general contractor to assure himself that the specifications of the contract are being reached step by step as the work progresses." 201 Ga. at 750, 41 S.E.2d 133. Similarly, in the *Johnson* case, the Court recognized that,

The fact that an employer continuously checks the work of an individual contractor to see that the work is being done according to the specifications of the job is thoroughly consistent with the relationship of employer and independent contractor and with the mere right of the employer to insist on a certain specific result.

104 Ga.App. at 619, 122 S.E.2d 308.

In *Hughes, supra*, the Court found the employee to be an independent contractor despite the employer's right to give "personal attention and superintendence to the work." 134 Ga. at 75(5a), 67 S.E. 542. In *Smith v. Maryland Cas. Co.*, 93 Ga.App. 222, 91 S.E.2d 188 (1956), the Court declared that a contractor has "the right to call to the attention of a subcontractor that the contract is not being followed and demand of the subcontractor a compliance therewith." *id.* at 223, 91 S.E.2d 188. The subcontractor could still be an independent contractor.

■ Any clause in the contract between P & V and C & I which authorizes C & I to inspect, or reject P & V's work, and any provision requiring P & V to issue reports to C & I, is completely consistent with the establishment of an independent contractor relationship between the parties.

### 5. *Equipment.*

■ Whether the employee furnishes his own tools and equipment is a factor to be considered. *Silas, supra*, 49 Ga.App. at 263, 175 S.E. 265. In a few cases, despite the fact that the employer furnished the equipment, the employee was found to be an independent contractor. *See e. g., Zurich General Accident & Liability Ins. Co. v. Lee*, 36 Ga.App. 248(2c), 136 S.E. 173 (1926); *Moates, supra; Cooper, supra.* The majority of cases hold that the fact that the employee furnishes his own tools and equipment is a factor tending to show an independent contractor relationship. *See e. g., Barbree v. Shelby Mutual Ins. Co.*, 105 Ga. App. 186, 123 S.E.2d 905 (1962) (some evidence, but not dispositive); *Radney, supra.*

P & V was contractually obligated (Article 11.3) to provide all material and equipment. This factor, too, militates against a finding that C & I and P & V were in a master/servant relationship.

6. *Right to terminate the contract or to fire an employee of the employee.*

■ The right to terminate the contract, or to fire employees of the employee indicates the existence of a master/servant relationship. *See e. g., Davis v. Starrett, supra,* 39 Ga.App. at 427, 147 S.E. 530; *Taylor v. Lumbermen's Mut. Cas. Co.,* 43 Ga.App. 292, 295, 158 S.E. 623 (1931); *Hamilton v. Pulaski County,* 86 Ga.App. 705, 714, 72 S.E.2d 487 (1952); *Cash, supra,* 101 Ga. App. at 383, 114 S.E.2d 57. Yet, the reservation of that right is not dispositive. Georgia courts have repeatedly held that the employer's right to terminate the contract, or to fire his employee's employees is not necessarily inconsistent with the independent contractor relationship. *See e. g., Johnson, supra,* 104 Ga.App. at 619–20, 122 S.E.2d 308; *Blair, supra,* 201 Ga. at 749–50, 41 S.E.2d 133 (pertaining to employer's right to employ additional men, and to control the independent contractor's hiring practices); *Cooper, supra* (employer controls the number of independent contractor's employees); *Zurich Gen. Accident, supra,* 36 Ga.App. at 248(1), 136 S.E. 173. *Hughes, supra; Banks v. Ellijay Lumber Co.,* 59 Ga.App. 270, 200 S.E. 480 (1939).

There is no evidence in the contracts that C & I could terminate its contract with P & V or control the hiring and firing of P & V's employees. C & I's right to "require properly skilled workmen on the job" does not tend to establish the existence of a master/servant relationship. This factor, too, points towards the existence of an independent contractor relationship.

7. *Nature or skill of employee's work.*

■ In *Swift & Co. v. Alston,* 48 Ga.App. 649, 173 S.E. 741 (1934) the Court stated,

It is inconceivable to this court that a large corporation of the character of the defendant would hire an unskilled man to perform one of the simplest tasks of hard manual labor, requiring scarcely more than muscle in its performance, yet one that must be performed in the running of its industry, and absolutely relinquish all right of control and direction.

*id.* at 652, 173 S.E. 741. *Accord, Hughes, supra,* at 76, 67 S.E. 542; *Richards v. Marco Realty Co.,* 57 Ga.App. 242, 244, 194 S.E. 880 (1938); *Lokey & Simpson, supra,* 57 Ga.App. at 580, 196 S.E. 210. The more skilled the employee is, the more likely he will be an independent contractor. As the plaintiff points out in her brief, the defendant was ignorant of the specialized equipment and tools of P & V. It is hard to believe that C & I would retain control over P & V's method of performing its work. This factor indicates that P & V was an independent contractor.

8. *Method of payment.*

Georgia courts direct the trier of fact to consider the method by which the employer compensates the employee. *Swift & Co. v. Alston,* 48 Ga.App. 649, 650–51, 173 S.E. 741 (1933); *Ocean Accident & Guarantee Corp., Ltd., v. Hodges,* 34 Ga.App. 587, 130 S.E. 214 (1925); *Irving v. Home Accident Ins. Co.,* 36 Ga.App. 551, 137 S.E. 105 (1926); *Scott v. Minor,* 55 Ga.App. 714, 191 S.E. 263 (1937); *American Mut. etc. Ins. Co. v. Harris,* 61 Ga.App. 319, 322–23, 6 S.E.2d 168 (1939). In this case, it appears that P & V was not paid by the hour, or piecework, but rather for the entire contract (Article 4). This evidences the existence of an independent subcontractor relationship.

9. *Other aspects of the P & V—C & I contract.*

The Court has already considered a number of the provisions of the contract upon which the parties have relied in their arguments. The defendant has also focused its argument on certain clauses in the "General Conditions" contract which is incorporated in the subcontract. In particular, the defendant points to Articles 4.3.1:

The Contractor shall supervise and direct the Work, using his best skill and atten-

tion. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.

and article 4.4.2 which obligates C & I to enforce strict discipline among his employees. Mention is also made of Article 10.2 which thrusts upon C & I the duty to maintain safety procedures and to safeguard equipment, workers, and the worksite.

The first sentence of Article 4.3.1 does not specifically authorize the contractor to control the *method* of performing the work, or the time. The clause can be interpreted reasonably to confer upon C & I the right to supervise the *product*, the result. The second sentence of Article 4.3.1 casts the *responsibility* for all means, methods, and techniques on C & I. Responsibility is synonymous with "liability" not "control". See, Black's Law Dictionary (1968). It can be interpreted reasonably to adjust the liability between the Owner and C & I (that clause appears in the "General Conditions" contract which binds all the actors in the construction project, and appears in the subcontract only insofar as the entire General Conditions contract is incorporated by reference). This interpretation is entirely consistent with Article 4.10.1 which renders the Contractor responsible to the Owner for the acts of all employees, including the subcontractors' employees.

Article 4.4.2 directs the contractor to enforce discipline among his employees. This clause does not evidence a right to control the time, method, or manner of the subcontractor's work.

Article 10.2 relates to the contractor's duty to protect the employees, the equipment, and the jobsite. This clause does not indicate the existence of a master/servant relationship.

10. *Conclusion.*

■ The Court has reviewed a number of cases in Georgia law which deal with the difficult question presented here. The cases are not tiles in a well-reasoned mosaic. Often, the result seems to evidence a reliance on some unarticulated factor. If method can be discerned from this brief odyssey through the cases, it escapes this Court. The protean concept of control is not capable of simple explanation. Perhaps it belongs within that genre of phenomena of which the Court must say "I can't define it, but I know it when I see it." [2]

C & I did not have the right to control the time, manner, and method of executing the work. It certainly could dictate what result it wanted, but there is no evidence that it could control what tools had to be used to accomplish that result. It certainly could dictate that the subcontractor work diligently, but there is no evidence that it could control P & V's work, hour-by-hour. The decisions in *Cooper v. Dixie Const. Co.,* 45 Ga.App. 420, 165 S.E. 152 (1932) and *Louisville & Nashville R.R. Co. v. Hughes,* 134 Ga. 75, 67 S.E. 542 (1909) are sufficient to compel this Court to deny defendant's motion for summary judgment on this ground.

## II

■ The defendant argues that because the deceased was aware of the danger posed by the high voltage power line, and because he carelessly handled the guy wire, there is no genuine issue of fact left for trial. The Court has canvassed thoroughly the testimony of the various deponents, and has failed to discover any two witnesses who describe the accident in the same way. Contrast, for example, deposition of Shirley, p. 12 with deposition of Agnew, pp. 36–42 (what actually occurred); and deposition of Williams 46–49 with deposition of Agnew pp. 20, 40 (the workers' plans for removing the cables). It is not the role of the Court to sift through the depositions and determine which witness is telling the truth, or to determine which rendition of the facts is more probably true. Furthermore, the evi-

2. *Cf. Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) (re: obscenity).

374

dence does not compel a finding that the deceased could have foreseen the danger of handling the wire as he did; or could have avoided the consequences by conducting himself, or handling the wire, in some other way; or that his intended method of disposing of the wire was not reasonable. Finally, this Court is particularly reluctant to weigh the alleged negligence of the plaintiff against the alleged negligence of the defendant to determine if the former's negligence was of sufficient magnitude to bar recovery. *See generally*, 10 Wright & Miller, Federal Practice and Procedure, § 2729. p. 568–70. Whether defendant is relying on a defense of contributory negligence or assumption of risk, the Court deems these questions to be more suited for juror deliberation than jurist contemplation when the facts are not certain. *Cf. Croley v. Matson Nav. Co.*, 434 F.2d 73, 75 (5th Cir. 1970).

ACCORDINGLY, defendant's motion for summary judgment is DENIED.