## 26417. DURHAM LAND COMPANY v. KILGORE.

DECIDED DECEMBER 4, 1937.

*Rosser & Shaw,* for plaintiff in error.
*McClure & McClure,* contra.

MACINTYRE, J. Robert Kilgore was killed while working in a coal mine belonging to the Durham Land Company. It is admitted that he died as a result of injuries arising out of and in

the course of his employment; also that at the time of his death his mother, the claimant, was totally dependent upon him for support. The sole question presented for consideration is whether, at the time of his death on January 8, 1935, he was an employee of the Durham Land Company. In determining this question it is necessary to determine whether R. E. Thompson, who employed the deceased, was himself an employee of the Durham Land Company or an independent contractor. It was aptly said in *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (2) (175 S. E. 265), that "In claims for compensation under the workmen's compensation act, where the question is whether the injured person, or the person under whom he was working, occupied the relation of an employee or of an independent contractor toward the alleged employer,. the line of demarkation is often so close that each case must be determined upon its own particular facts." However, there is a very distinct line of demarkation between these two relationships. If the employer has or assumes the right under the contract to control and direct *how* the work shall be done, that is to say, if the employer has or assumes the right under the contract to control the manner in which the details of the work are to be executed, as distinguished from the mere right to superintend it so that the desired results are obtained, the relationship is that of master and servant. If, on the other hand, the employer has or assumes only the right under the contract to superintend the work to the end that the desired results so contracted for are obtained, and does not have or assume the right under the contract to control the manner in which it is done, which right is vested in the contractor, the relationship is that of employer and independent contractor. Thus it has been said that where a contract is entered into, providing for the execution of a specific kind or piece of work for a stated compensation, "the test to be applied in determining whether the relationship of the parties under" the "contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (2) (164 S. E. 901). See also *Bentley* v. *Jones,* 48

*Ga. App.* 587 (173 S. E. 737), and cit. In considering this question, the nature of the service contracted for, whether it is a service requiring skill or merely menial labor, whether it necessitates the employment of others besides the contractor in its execution or not, its duration, and whether it be connected with or independent of that of the employer, are salient points. Ordinarily, where there is a written contract between the parties, and there is nothing to indicate that the employment was anything but as therein stated, a proper construction of it will control, yet in a case where such a contract is urged against a claim by one dependent upon a deceased employee at the time of his death, as a reason for denying compensation, as in the present case, the court will upon slight evidence look behind the contract and seek the real intent and understanding of the parties to the contract; and where, notwithstanding the express provisions of the contract, there is evidence from which it can be inferred that the actual understanding of the parties was that the employer was to have and indirectly assume the right to control the manner of doing the work, and that the contract was a device or subterfuge to avoid the provisions of the workmen's compensation law, the court will hold that the deceased employee was a servant and not an independent contractor. Thus, in the present case, while the contract between the Durham Land Company, the owner of certain coal mines and equipment, and R. E. Thompson, the immediate superior of the deceased, whereby the Durham Land Company leased to Thompson one of those mines and certain equipment, and Thompson agreed to mine the coal and deliver the same to the Durham Land Company or any one that it might designate at the mouth of the mine, at a stipulated price per ton, which contract further stipulated that the Durham Land Company "shall have nothing to do with the rights of Thompson as to the personnel, such as hiring or firing, rates of pay, or anything in reference to the management of the coal mining operation," the contract prima facie created between the Durham Land Company and Thompson the relationship of employer and independent contractor; and while the fact that the Durham Land Company reserved and actually exercised the right of seeing that the coal was properly mined and obtained at points designated by its surveyor would not tend to alter that relationship (*Atlanta & Florida R. Co.* v. *Kimberly*, 87 *Ga.* 161, 13 S. E. 277, 27 Am.

St. R. 231; *United Painting & Decorating Co.* v. *Dunn,* 137 *Ga.* 307, 73 S. E. 492; *Louisville & Nashville R. Co.* v. *Hughes,* 134 *Ga.* 75 (5, a), 67 S. E. 542; *Lampton* v. *Cedartown Co.,* 6 *Ga. App.* 147 (3), 64 S. E. 495; *Bentley* v. *Jones,* supra), yet where there is evidence that ranking officials of the Durham Land Company assumed and did exercise the right to fix the rate of pay, hours of labor, power of discharge, and the working conditions of the employees of Thompson, through contracts with the miner's union, to which all of such employees belonged, including the deceased, and that Thompson, though giving them no express authority to act for him, acquiesced therein, which, when considered in connection with the nature of the work, the business of the employer, and other acts performed by the employer in connection with the execution of the contract, such as keeping the books, paying the miners, furnishing the pay-roll, authorizes the inference that, notwithstanding the terms of the contract, the real agreement and understanding of the parties was that the employer was to have control over the manner and means of doing the work, this court will not upset such a finding by the Department of Industrial Relations. Where such a finding is authorized, the Department of Industrial Relations is authorized to assess against the defendant damages for wilfully failing to carry workmen's compensation insurance and reasonable attorney's fees, as provided in the Code, § 114-603. The judge of the superior court did not err, on appeal, in affirming the award of the industrial commission.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*