MACON NEWS PRINTING COMPANY *v.* HAMPTON.

624

No. 13684. JULY 10, 1941. REHEARING DENIED JULY 19, 1941.

*Harris, Harris, Russell & Weaver* and *Harry S. Strozier*, for plaintiff in error.

*Johnston & Jones* and *Jones, Jones & Sparks*, contra.

*Howell & Post, Arnold, Gambrell & Arnold, Kennedy, McWhorter & Jenkins, Farkas & Burt, Hull, Barrett, Willingham & Towill,* and *Foley & Chappell*, for persons at interest.

REID, Chief Justice. The ruling in the headnote is but an application of the principle of the decision in *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873). Suit was instituted against the Macon News Printing Company, seeking damages for personal injuries alleged to have been the result of the negligence of one of the defendant's carriers, committed while he was delivering papers and acting within the scope of his employment. The defendant disclaimed liability for the acts of the carrier, on the ground that he was an independent contractor. On this issue the parties introduced considerable evidence. The judge directed a verdict in favor of the defendant, and the plaintiff carried the case to the Court of Appeals. That court in its decision (64 *Ga. App.* 150) one Judge dissenting, reviewed the evidence, and after discussing its various phases concluded that a "finding was not demanded, as a matter of law, that the carrier or newsboy was acting under an agreement with the defendant in the capacity of an independent contractor," and that accordingly the judge erred in directing a verdict for the defendant on that issue.

Careful consideration of the decision and the petition for certiorari has convinced us that the present case is not one in which this court's power under the constitution to issue the writ of certiorari to review decisions of the Court of Appeals should be exercised, and that the writ was improvidently granted. It may be safely said that there can be no doubt as to what the rule is for determining when an employee is an independent contractor. The rule has been stated many times in the decisions, and none with more uniformity and consistency. As said in *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (164 S. E. 901): "Under the Georgia statute and decisions, the test to be applied in determining whether the rela-

tionship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." See *Durham Land Co.* v. *Kilgore,* 56 *Ga. App.* 785 (194 S. E. 49) ; *Swift & Co.* v. *Alston,* 48 *Ga. App.* 649, 653 (173 S. E. 741), and cit. The Court of Appeals in the present case plainly recognized this rule, and simply applied it to the facts and inferences which they found to have been established by the evidence introduced. Thus, in any review of that decision, the question inevitably becomes, did the Court of Appeals err in its construction of the evidence and the application of the settled rule of law thereto? The first attack on the decision is a general one. This is, in substance that the "evidence as a whole" discloses that the only right of control reserved and exercised by the defendant over the newspaper carrier in the performance of the work was simply to bring about the results contemplated by the contract, to wit, the circulation of the defendant's newspaper. It is asserted that the Court of Appeals ignored this fact; and that the effect of the decision, in view of the evidence, is to establish a rule that an employee is a servant, "notwithstanding the only right of control reserved by the employer is for the purpose only of producing the result contemplated by the contract." The Court of Appeals in its opinion clearly recognizes, as already indicated, that the right of an employer to exercise only a mere general supervision over the employee in the performance of the work in order to insure that the ends prescribed by the contract shall be substantially met does not render the employee a servant; and its decision does not constitute authority to the contrary. The rule as announced in the decision can amount to no more than that the right of control of the carrier by the defendant, as shown by the evidence, was not simply that of general supervision to insure the desired results, but went to the manner and means of the performance of the details of the work. Therefore the question presented, as already suggested, is whether in this connection the Court of Appeals erred in its construction of the evidence and the application of the rule of law thereto. In this assignment it is alleged that "The trouble with the opinion is that

it isolates from their context separate facts shown by the record, as will appear from the assignments of error following." Looking at the next assignment of error we find that it has as its subject-matter the following portion of the decision of the Court of Appeals: "The defendant . . in instances undertook to direct how and in what manner a newsboy should make deliveries of the papers; that upon an occasion when the defendant was remonstrated with by the Federal postal authorities as to the practice of the newsboys in putting the papers in mail-boxes, the defendant directed the newsboys not to do this." The criticism is that "This is a misapprehension of the record," and further that, even if it were correct, it showed no more than supervision and control for the purpose of obtaining the desired results under the contract. In the next assignment a similar criticism is directed to another excerpt from the opinion. In the next assignment complaint is made that "The court in its opinion seizes on the fact that in isolated instances petitioner billed and collected from a carrier's subscribers, as a fact to show that Elmore [the carrier] was an agent and not an independent contractor." It is alleged that the court overlooked in this connection important facts in the record, such as the fact that the "billing was done at the carrier's request to help him; and that such collections were directed to the carrier's account." Also that the "billing and collection of subscriptions can not justly be considered apart from the companion fact that the carrier bought and resold his papers, and without recognition of the exceptional nature of each such isolated instance of billing or collection." In the next assignment it is complained that "The court bases its decision in part on the alleged fact that petitioner placed on subscriber's cards a statement that the carrier was in business for himself only after the collision that gave rise to the suit." After a quotation from the opinion to this effect, the ground continues: "Specifically, petitioner contends, the above excerpt from the opinion is not in accord with the evidence." It is further charged that this fact, even if true, was not evidence in support of the ruling of the Court of Appeals. In the next assignment it is alleged, that, based upon testimony of a certain witness, the court stated that "petitioner had the right to 'fire'" the newspaper carrier. "This is based, petitioner contends, upon a fundamental misconception of the record, and of the law." In

this connection it is alleged that the evidence disclosed that the defendant had the right to discharge the carrier only if he "was not producing the result contemplated by his contract," and that this "in its last analysis . . was only to control the result." It is alleged that, without more, the right of the defendant to discharge the carrier would be indicative of the relationship of employer and servant, "But there is more—much more." The petitioner then sets forth many facts appearing from the evidence, and alleges further that "The right to 'fire' must be considered in the light of the whole record. The opinion of the Court of Appeals does not so consider it." The nature of these assignments of error clearly demonstrates to us that the present case is not one for the grant of certiorari. In our rule 52 (Code, § 24-4556, f) in regard to the writ of certiorari to the Court of Appeals, with the *Yesbik* case in mind, we sought to illustrate the character of cases in which the writ would and would not be sustained, though we noted that they were not to be considered "controlling nor fully measuring the court's discretion." Among the illustrations given as to when the writ would not be granted was the following: "Because of an assignment of error complaining of a ruling or decision of the Court of Appeals as to the sufficiency or insufficiency of the evidence to support the verdict or finding in the trial court, where there is no assignment of error upon any proposition of law announced by the Court of Appeals as basis for its conclusion as to the sufficiency or insufficiency of the evidence." This rule should certainly, as a general proposition, be followed. The fact that a great many persons throughout the State are employed as carriers for the distribution and delivery of newspapers under the same general plan under which the carrier in the present case was employed does not alter our opinion. In this connection briefs have been filed by counsel for other newspapers, as amici curiæ. The decision of the Court of Appeals is definitely not one that a newspaper carrier operating under what is known as the "little merchant plan," whereby the carrier, operating over a fixed route or within a designated territory, purchases papers from the newspaper company for delivery to the subscribers in his territory, his remuneration being the difference in the amount paid for the papers and the amount charged and collected by him from the subscriber, both of which are fixed by the company, is as matter of law a serv-

ant of the newspaper. In determining that the carrier in the present case was a servant the Court of Appeals pointed, among others, to the fact that the contract of employment was oral; that the defendant upon complaint of the postal authorities had directed its newsboys not to put papers in mail-boxes; that on occasions when subscribers failed to pay the newsboys for the papers the defendant billed the subscribers as debtors to it; that before the accident the defendant received from subscribers on newsboy's route checks payable to itself and cashed them, and after the accident the defendant required subscribers to make the checks out to the carrier; that after the accident cards were printed by the defendant for delivery by the newsboys to their subscribers, which contained the statement that the newsboy was in business for himself; that the defendant asserted the right to discharge a carrier "upon any grounds it saw fit," and if at any time he "failed to comply with any order or direction of the defendant;" that "if a subscriber paid for a subscription in advance, there was a contract with the newspaper which it felt itself obligated to carry out, and that the newspaper could require the newsboy to deliver the paper if it was on his route." In addition to all of this, the testimony of Horne, who at one time had been a supervisor of the defendant, was quoted at length, wherein he described the method of operation between the newspaper and the carrier; from all of which the court concluded that "It is inferable from this testimony that the defendant, through its supervisor and district manager, exerted control over the time, method, manner, and means by which the newsboys performed their duties and delivered papers to the defendant's customers." There is no suggestion that these facts might be shown as to all carriers operating under the "little merchant plan" in the State; but on the other hand, in each of the briefs filed by other newspapers it is clearly indicated that such is not the case. A case of this character must generally "be determined upon its own particular facts." *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (175 S. E. 265). We have already noted that the principle involved is well established. Even if the decision of the Court of Appeals does in fact misapply the principle to the facts as found by them to have been shown by the evidence introduced, the decision would constitute authority only in a case where the facts are identical. *Southern Ry. Co.* v. *Brown,* 126 *Ga.* 1 (54 S. E. 911). It is hardly likely

that the same conjunction of facts will again appear. The decision in the present case is not in fact a binding authority on the Court of Appeals, since one of the Judges dissented; and if it is erroneous, we must assume that hereafter the Court of Appeals will refuse to follow it, or that it may suffer the fate of never being cited except to be distinguished. There is some argument contained in the briefs filed by amici curiæ that the present decision is in conflict with *U. S. Casualty Co.* v. *Scott*, 51 *Ga. App.* 115 (179 S. E. 640), and that we should grant certiorari to settle this conflict. This is obviously untenable. The decision in that case turned simply on the question whether or not the injury arose in the course of and out of the carrier's employment, and no reference was made to the question whether the carrier was a servant or an independent contractor. It is interesting to note in this connection that the Judge who dissented in the present case prepared the decision in the *Scott* case, and made no reference to it in his dissent.

It is not improper to note that counsel for the defendant in certiorari has not pressed this point upon us. The point is one, however, which under our duty we are bound to raise. The doctrine of the *Yesbik* case is predicated on the theory that the constitution, in giving to this court the power to review the decisions of the Court of Appeals by writ of certiorari, neither intended to burden this court with the arduous task of becoming a reviewing court of all of the decisions of that court nor in this manner to destroy the usefulness of the Court of Appeals as a court of review. It is perhaps true that we have at times failed to apply these principles; but this only constitutes all the more reason why we should, upon occasion such as the present, look back and reassert and reaffirm them. In accordance with this opinion the writ of certiorari is

*Dismissed. All the Justices concur.*