FIDELITY & CASUALTY COMPANY OF NEW YORK *et al.* *v.* WINDHAM.

No. 18098. ARGUED FEBRUARY 9, 1953—DECIDED FEBRUARY 24, 1953.

*Swift, Pease, Davidson & Chapman,* for plaintiff in error.
*W. B. Skipworth Jr.,* contra.

ALMAND, Justice. This case is here on a writ of certiorari to the Court of Appeals. The petitioner assigns error upon the decision and judgment of that court in the case of *Fidelity & Casualty Co. of New York* v. *Windham,* 87 *Ga. App.* 198 (73 S. E. 2d, 517). Petitioner asserts that the Court of Appeals erred in holding that the evidence was sufficient to authorize a finding that Windham, the claimant, was an employee of the cab company at the time of his injury and was entitled to compensation under the Workmen's Compensation Act, it being alleged by the petitioner that the court erred in holding that the relationship of employer and employee "existed between Co-Op Cab Company and Irby L. Windham and overlooked

and failed to consider the part of Code (Ann.) § 114-101 which states that an employer is one 'using the services of another for pay' "; and also because there was no evidence showing that Co-Op Cab Company paid the claimant any "wages" as that term is used in the Workmen's Compensation Act.

Code § 114-101 defines an employer as one engaged in any business for gain or profit using the service of another for pay, and defines an employee as a person in the service of another under any contract of hire. Code § 114-402, as amended by the act of 1945 (Ga. L. 1945, p. 486; Code, Ann. Supp., § 114-402), in prescribing the basis for computing compensation under the Workmen's Compensation Act, provides that "the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation".

The determinative question before us is whether the evidence in this case was sufficient to establish the relationship of employer and employee within the meaning of the Workmen's Compensation Act, because, if such relationship was not established, the State Board of Workmen's Compensation was without jurisdiction to entertain his claim. *Hartford Accident & Indemnity Co.* v. *Thompson,* 167 *Ga.* 897 (147 S. E. 50); *Parker* v. *Travelers Insurance Co.,* 174 *Ga.* 525 (163 S. E. 159, 81 A.L.R. 472). The claimant has the burden of proving such relationship. *Banks* v. *Ellijay Lumber Co.,* 59 *Ga. App.* 270 (2) (200 S. E. 480). *Young* v. *Demos,* 70 *Ga. App.* 577 (28 S. E. 2d, 891.) "In determining whether or not the relationship of master and servant prevails in a compensation case, the same principles that exist under the common law obtain." *Travelers Insurance Co.* v. *Clark,* 58 *Ga. App.* 115, 121 (197 S. E. 650). The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Yearwood* v. *Peabody,* 45 *Ga. App.* 451(2) (164 S. E. 901); *Macon News Printing Co.* v. *Hampton,* 192 *Ga.* 623 (15 S. E. 2d, 793). It was held in *Georgia Railway & Power Co.* v. *Middlebrooks,* 34 *Ga. App.*

156 (128 S. E. 777): "Payment of wages, although not necessary to render one a master, is necessary to bring one within the the Workmen's Compensation Act, which contemplates that compensation shall be fixed in proportion to the employee's wages as applied to the particular injury."

We will not attempt here to set out all the evidence relating to this question, because it is fully stated in the report of the case in 87 *Ga. App.* 198, supra. It may be summarized as follows: Co-Op Cab Company owned automobiles used as taxicabs, and maintained an office and passenger station in Columbus. The claimant rented a cab equipped with radio by the day from the company for a period of 12 hours. For the use of the cab the claimant paid the company $6.50 a day; the claimant paid for the gasoline consumed by the car while he operated it, and the company supplied the oil. The claimant paid for his driver's license and permit to operate the cab, kept all the money that he received from fares, and did not have to account to the company in any manner as to the fares collected. The claimant was free to drive or not drive the cab during the period of rental, and could take the cab out of taxicab service any time he desired. If the claimant was arrested for violating the law, he paid his own fine. The taxicab was equipped with a 2-way radio system, whereby the company could inform him as to the location of any passenger wanting cab service; and, under his agreement with the company, he was supposed to answer such calls, picking up the passengers at the designated place or at the passenger station. The company had the right to refuse to rent a cab to the claimant at the beginning of any day, but there was no evidence that the company retained any right to terminate the rental during the particular day on which the cab was rented, the rental of the cab being on a day-to-day basis. There was no evidence that the company paid to the claimant any compensation in the way of wages, commission, or bonus, and it appeared that the only money exchanged between the parties was the payment by the claimant of $6.50 to the company for the rental of a cab for a 12-hour day.

The majority opinion of the Court of Appeals places much stress on the fact that the cab company determines each day what cab the claimant would drive, and requires the claimant

to answer radio calls in picking up passengers at designated points, with the right of the company to refuse to rent a cab to the claimant for breaches of these requirements, and holds that these facts were sufficient to show that the cab company retained control and supervision over the method, time, and manner in which the claimant operated a cab, and consequently were sufficient to show the relationship to be that of employer and employee.

We are of the opinion that these facts are not sufficient to show such relationship. The agreement on the part of the claimant to answer radio calls was but a part of the rental contract, for the use of the cab was primarily for the benefit of the public and the claimant, and such agreement looked towards the results of the work to be done rather than the method to be pursued, in that the purpose of renting a cab to the claimant was the hauling of passengers. The fact that at the beginning of each day the company could refuse to permit the claimant to rent a cab for the day cannot be said to be a right to discharge, because each day's rental was a separate contract, and the cab company would have a right to refuse to rent a cab for any reason, whether it grew out of the failure of the claimant to obey instructions or for any other reason. That the claimant was not an employee is correctly stated by Judge Felton in his dissenting opinion: "I think that the evidence demanded a finding that the claimant's time, manner, and method of operating his rented cab were not controlled by the company, so as to render him an employee of the company within the meaning of Code § 114-101. The only reasonable inference from the evidence is that the only disciplinary action the company could take when a driver refused to pick up a passenger when the request was relayed by radio would be to refuse to rent a cab to that driver thereafter. This refusal thereafter to rent a cab would not amount to a control of the time, manner, and method of the operation of the cab by the company."

We have found only one other compensation case which upon its facts is practically identical with the case now before us, and that is Coviello v. Industrial Commission of Ohio, 129 Ohio St. 589 (196 N. E. 661). The definition of the term "employee" under the Ohio compensation law is practically identical with

its definition under the Georgia Workmen's Compensation Act, and it was there held: "The relation of employer and employee under the Workmen's Compensation Act does not arise from a contract whereby a taxicab is leased by one to another at a stipulated, unconditional rental per day, no accounting for fares collected from its operation being required or made. Such arrangement does not constitute a contract for hire."

The question of whether or not taxicab drivers operating automobiles under rental systems from the taxicab owners, upon arrangements substantially identical with those in the present case, created the relationship of employer and employee under the Federal Insurance Contribution Law, which imposes a tax upon wages paid by an employer to his employee, has been before the Federal courts on several occasions. The following cases hold that the relationship of employer and employee must exist before such tax can be collected, and that this relationship did not exist in those cases: Magruder *v.* Yellow Cab Co., 141 Fed. 2d, 324; United States *v.* Davis, 154 Fed. 2d, 314; Woods *v.* Nicholas, 163 Fed. 2d, 615; Party Cab Co. *v.* United States, 172 Fed. 2d, 87; New Deal Cab Co. *v.* Fahs, 174 Fed. 2d, 318.

Under the facts in this record, the matter involved in the claim not being within the jurisdiction of the State Board of Workmen's Compensation, the award by the board was without evidence to support it, and the Court of Appeals erred in affirming the judgment of the trial court approving such award. *Hartford Accident & Indemnity Co.* v. *Thompson,* 167 *Ga.* 897.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., not participating.*