## 57856. FARMER v. EMPLOYERS INSURANCE OF WAUSAU et al.

UNDERWOOD, Judge.

In this workers' compensation proceeding it was determined that claimant suffered compensable injuries arising out of and in the course of his employment as a truck driver with Ryder Truck Lines, Inc. and Hames Trucking Company. On appeal to the full board, and upon de novo consideration of all the evidence, the board determined, with one director dissenting, that "Hames Trucking Company neither had the right to nor exercised any control over claimant in reference to his trip back into Georgia . . ." The board also determined that the language of the "trip lease" entered into by Ryder and Dan Martin, the owner of the tractor in question, refers to results to be accomplished and was "never understood to give Ryder the right to control claimant as to the time, manner, and method of his driving their trailer to Georgia." The board then concluded that "no employer-employee relation existed between claimant" and the two trucking concerns, and the claim was denied. On appeal to the superior court the denial was affirmed. Claimant appeals; we likewise affirm.

As noted above, the tractor which claimant was driving was owned by Dan Martin, who leased considerable trucking equipment (tractors and trailers) to Hames Trucking, Inc. The agreement between Martin and Hames as to the leased equipment provided that return loads "from without the State of Georgia to some destination within the State of Georgia" were the "sole responsibility of [Martin] who shall be entitled to all revenue for loads that are trip leased to a common regulated carrier." The contract called for Martin "to furnish at his expense, competent, qualified, licensed and experienced operators to operate said leased equipment" who were to be the employees of Martin, and he was to be solely responsible for the "compensation, selection, supervision and control of said operators," although Hames would have the right to request Martin to replace any operator who "may not be qualified." Another provision of the lease stated that "the operators of said equipment shall be under the exclusive control, direction, jurisdiction and supervision of [Martin]. [Hames] shall only have the authority to designate the destination of outgoing loads."

The record reveals that the claimant driver hauled for Martin a load of poultry from Georgia to Chicago. As is common practice, the driver then located a regulated carrier, Ryder, which had a trailer that needed to be delivered to Georgia on the return trip. The driver, representing Martin, signed an agreement with Ryder, referred to as a "one-way trip lease," providing for the transportation of goods in interstate commerce "under direction and control of Ryder Truck Lines, Inc." The lease stated that "the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee [Ryder] and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and all regulatory bodies having jurisdiction. It is agreed that Lessor [Martin] will carry acceptable Public Liability and Property Damage Insurance." It further provided that Martin was responsible for the maintenance of the tractor, payment of the driver and payment for any citations or fines received by him.

During the return trip from Chicago an accident occurred in which the driver received permanent injuries. He subsequently filed this claim seeking workers' compensation contending he was an employee of Ryder and Hames at the time of the accident.

1. The issue in this case is whether the "control" provisions of a "trip lease" agreement, pursuant to which the owner of a tractor unit leases such unit to a regulated carrier for a single trip to deliver a single trailer of freight, makes the driver an employee of the regulated carrier for purposes of determining workers' compensation coverage. It is urged that because applicable federal legislation, 49 USCA § 304, requires that the equipment in a trip lease arrangement be under the control of the regulated carrier, the driver becomes an employee of the regulated carrier for the term of the lease, i.e., during the one-way trip.

This, we believe, is an unnecessarily narrow, one-dimensional test for determining whether there exists an employee-employer relationship and ignores some practical aspects of a trip-lease transaction. It also goes beyond the public purpose which Congress sought to serve in mandating that the regulated carrier exercise "control" in a trip-lease situation. The United States Supreme Court, while not addressing the question presented in this case, has dealt with the background and purpose of the "control and responsibility" provisions of 49 USCA § 304 in Transamerican Freight v. Brada Miller Freight Systems, 423 U. S. 28 (96 SC 229, 46 LE2d 169) (1975). In that case the court recognized the distinction between operational control concerning the equipment and other aspects of the shipment and ministerial control concerning the driver. "It is to be acknowledged, to be sure, that the lessor's furnishing of a driver allows an aspect of control, in a sense, to remain in the lessor. But this is ministerial control, not control of the kind with which the Commission was concerned [in promulgating regulations under the legislation] . . . Its concern . . . was with operating authority, with routes and destinations and classes of freight, with the integrity of certifications, and with that ultimate control in the lessee that makes and keeps it responsible to the public, the

shipper, and the Commission." Transamerican Freight v. Brada Miller Freight Systems, supra, at p. 39.

Our conclusion is that the "control" provisions which were included in the written lease pertaining to this "trip lease" were mandated by Congress to make the regulated carrier responsible for damages to the freight during shipment and to provide other protections to the public whom the carrier has been authorized to serve. We can find no pursuasive indication that these provisions were intended to affect the "ministerial" aspects of the relationship between the lessor and the driver, or to make the driver an employee of the regulated carrier. Ryder could not fire the driver or replace him with another driver. The driver was paid by Martin who also paid for all expenses of the trip. The nature of the relationship between the claimant and Ryder does not satisfy our prior standards for finding an employment relationship. *Sanders Truck Co. v. Napier,* 117 Ga. App. 561 (161 SE2d 440) (1968); *Pilcher v. Wise Elec. Co.,* 129 Ga. App. 92 (198 SE2d 713) (1975).

2. As Hames was clearly not claimant's employer with respect to this occurrence, the board properly denied compensation as to it.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Smith, Shulman, Birdsong and Carley, JJ., concur. McMurray, P. J., and Banke, J., dissent.*

ARGUED MAY 3, 1979 — DECIDED NOVEMBER 30, 1979 —

*John M. Strain,* for appellant.
*George Pope, Jr., Andrew J. Hamilton, Edward E. Strain, III,* for appellees.

McMURRAY, Presiding Judge, dissenting.
This is a workers' compensation case in which claimant was a truck driver injured in a highway collision while in the course of his employment. He was driving a tractor trailer in which he was transporting goods in interstate commerce. Without doubt he was the employee of someone.

The issue here is to determine which of three concerns were his employer or employers. The truck which he was driving was owned by Dan Martin who leased considerable trucking equipment (tractors and trailers) to Hames Trucking, Inc. The lease agreement as to the tractor in question which claimant was driving was executed by "Hames Trucking, Inc.," by C. Scott Hames, lessee. It involved shipment of goods known as "outgoing loads." With reference to return loads "from without the State of Georgia to some destination within the State of Georgia," this became the "sole responsibility of Lessor who shall be entitled to all revenue for loads that are trip leased to a common regulated carrier." If there were return loads of exempt commodities, same were to be in the name of "Hames Trucking, Inc." and covered by liability and cargo insurance only when lessee was notified in advance of shipment with cost to lessee. This contract called for the lessor "to furnish at his expense, competent, qualified, licensed and experienced operators to operate said leased equipment." Said operators were to be the employees, agents and/or servants of the lessor who was to be solely responsible for the "compensation, selection, supervision and control of said operators," although the lessee would have the right to request the lessor to replace any operator "which may not be qualified." Another division of that lease stated unequivocally that, "the operators of said equipment shall be under the exclusive control, direction, jurisdiction and supervision of Lessor. Lessee shall only have the authority to designate the destination of outgoing loads."

However, at the time in question when the driver was injured he had transported for Hames Trucking, Inc. a load of "exempt commodities" (chickens) from metropolitan Atlanta to Chicago. A contract was then executed with Ryder Truck Lines, Inc., as lessee, and "Hames Trucking Co., . . . send check to Dan Martin" for the transportation of goods in interstate commerce from Deerfield, Illinois to Atlanta, Georgia, *"under direction and control of Ryder Truck Lines, Inc."* (Emphasis supplied.) This lease clearly stated that, "the leased equipment under this agreement is *in the exclusive possession, control, and use of the authorized carrier Lessee*

and that *the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and all regulatory bodies having jurisdiction.* It is agreed that Lessor will carry acceptable Public Liability and Property Damage insurance. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment." (Emphasis supplied.)

The worker's claim was filed against Ryder Truck Lines, Inc. and Hames Trucking Company and their respective insurers. The administrative law judge, hearing the case and based on the above leases, as well as other evidence, made a determination that the injuries sustained were accidental and covered by workers' compensation *while arising out of and in the course of his employment with Ryder Truck Lines, Inc.* and Hames Trucking Company.

On appeal to the full board and upon de novo consideration of all evidence the board determined, with one director dissenting, that "Hames Trucking Company neither had the right to nor exercised any control over claimant in reference to his trip back into Georgia..." The board also determined that the language of the trip lease refers to results to be accomplished and "were never understood to give Ryder the right to control claimant as to the time, manner, and method of his driving their trailer to Georgia." The board then concluded that "no employer-employee relation existed between claimant" and the two trucking concerns, and the claim was denied. On appeal to the superior court the denial was affirmed. The majority affirms. To this I cannot agree for the following reasons.

1. Based upon the evidence and the law of Georgia with reference to employee status there is no doubt that the claimant was in the employ of Ryder Truck Lines, Inc. shown in the award and in the hearing since the truck was involved in interstate commerce subject to the laws and regulations of the Interstate Commerce Commission in effect on November 8, 1977. Neither the superior court nor the board was in error in denying the claim as to "Hames Trucking, Inc." (Hames Trucking Company) as this trucking concern hauls only exempt products and is,

therefore, not subject to Interstate Commerce Commission regulations. See *Howard Sheppard, Inc. v. McGowan,* 137 Ga. App. 408, 410 (224 SE2d 65); *American Motorists Ins. Co. v. Brown,* 128 Ga. App. 813 (198 SE2d 348); *Fidelity & Casualty Co. of N. Y. v. Windham,* 209 Ga. 592, 593 (74 SE2d 835); *Hodges v. Doctors Hospital,* 141 Ga. App. 649, 653 (234 SE2d 116); *Bibb Mfg. Co. v. Martin,* 53 Ga. App. 137 (185 SE2d 137).

2. The trip lease prepared by Ryder Truck Lines, Inc. and introduced by it to define the relationship between the claimant and Ryder Truck Lines, Inc. shows unequivocally that the leased vehicle (tractor and trailer) was, "under direction and control of Ryder Truck Lines, Inc. . ." as the carrier from Deerfield, Illinois to Atlanta, Georgia. Not only was the tractor and trailer under Ryder's control, but the law and regulations as well as the contract gave it exclusive possession, control and use as the authorized carrier lessee which assumed full responsibility in respect to the equipment. It thus had the right to control the manner and means of the work performed by the claimant to such an extent to create an employer/employee relationship. See *Montgomery Trucking Co. v. Black,* 231 Ga. 211, 213 (200 SE2d 882); *Blair v. Smith,* 201 Ga. 747 (41 SE2d 133); *American Cas. Co. v. Harris,* 96 Ga. App. 720 (101 SE2d 618); *Liberty Mut. Ins. Co. v. Kinsey,* 65 Ga. App. 433 (16 SE2d 179); *Ratliff v. Liberty Mut. Ins. Co.,* 149 Ga. App. 211, 212 (3) (253 SE2d 799); *Golosh v. Cherokee Cab Co.,* 226 Ga. 636 (176 SE2d 925). The law requires and demands that the equipment engaged in interstate commerce be under the exclusive custody and control of the carrier. 49 USCA § 304 (since repealed in part October 17, 1978). Consequently, the claimant was the driver of the carrier, regardless of any arrangement that the carrier had with the lessor as to the equipment, payment of the driver or other indemnification agreement with respect to same. See *Dove v. Nat. Freight, Inc.,* 138 Ga. App. 114, 116 (4) (225 SE2d 477); *T. G. Stegall Trucking Co. v. Tower Lines, Inc.,* 135 Ga. App. 286, 287 (2) (217 SE2d 488). Compare *Mitchell v. Burden Bros., Inc.,* 126 Ga. App. 75 (189 SE2d 909); *Farmers Mut. Exchange of Commerce, Inc. v. Sisk,* 131 Ga. App. 206 (205 SE2d 438); *Flowers v. U.S.S. Agri-Chemicals,*

139 Ga. App. 430 (228 SE2d 392).

The denial of the claim has been made on the erroneous legal theory that the claimant could not have been an employee of the carrier since the tractor was owned and operated by another leased to that carrier. By law the carrier has been *required to assume control of the manner, means and handling of this tractor trailer involved in interstate commerce.* The superior court, as well as the board, erred in determining there was no employee/employer relationship between the claimant and the carrier (Ryder Truck Lines, Inc.). *Barbree v. Shelby Mut. Ins. Co.,* 105 Ga. App. 186, 188 (123 SE2d 905); *Miller v. Travelers Ins. Co.,* 111 Ga. App. 245, 248 (141 SE2d 223); *Thomas v. Ford Motor Co.,* 123 Ga. App. 512 (181 SE2d 874); *Fleming v. U. S. Fidelity &c. Co.,* 137 Ga. App. 492 (2) (224 SE2d 127).

I therefore respectfully dissent.

I am authorized to state that Judge Banke joins in this dissent.