**Reese HAMMOND, et al.**

**v.**

**JAMES W. GRIFFIN COMPANY, INC. and James W. Griffin.**

**Civ. A. No. C77–1947A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 17, 1981.

Bernard M. Baum and Louis E. Sigman, Chicago, Ill., James T. Langford of Jacobs & Langford, Atlanta, Ga., for plaintiff.

Victor A. Cavanaugh and Mary E. Mann, of Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendants.

## ORDER

NEWELL EDENFIELD, District Judge.

This action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1132, is before the court on the special master's report and on plaintiffs' motion to adopt that report.

The facts in this case are set out extensively in the special master's report. Since

no party objects to those findings,[1] and since after examination of the record, the report, and the briefs the court concludes that the findings are not clearly erroneous, the court ADOPTS the master's findings of fact. Rule 53(e)(2), Fed.R.Civ.P.; *NLRB v. Bancroft Mfg. Co.*, 635 F.2d 492, 494 (5th Cir. 1981), *cert. denied sub nom. Craft Metals, Inc. v. NLRB*, —— U.S. ——, 101 S.Ct. 3053, 69 L.Ed.2d 421, 107 LRRM 2632 (1981); *NLRB v. J. P. Stevens & Co.*, 538 F.2d 1152, 1160 (5th Cir. 1976).

Defendants object to three of the special master's conclusions of law:

1.  The special master's conclusion of law that Melvin Verdis Atkinson is an employee of defendants, rather than an independent contractor;

2.  The special master's conclusion of law that plaintiffs are entitled to liquidated damages and interest; and

3.  The special master's conclusion of law that plaintiffs are entitled to an award of attorney's fees.

*Employee/Independent Contractor*

James W. Griffin and James W. Griffin Company, Inc. (Griffin) entered into a collective bargaining agreement with Local 926, International Union of Operating Engineers. A part of that collective bargaining agreement bound Griffin to make contributions to plaintiff trustees on behalf of all operating engineers Griffin employed for all hours they worked that were covered by the agreement. Special Master's Report, pp. 1–2 (hereinafter designated as SMR).

Defendants' first objection centers on the special master's determination that Atkinson was an employee of defendants at all times relevant to this action, and not an independent contractor. Based upon that determination, the master concluded that defendants are liable for contributions to the fringe benefit trusts at the prevailing rate for all hours Atkinson worked (SMR 9). Because defendants considered Atkinson an independent contractor not covered by the collective bargaining agreement, defend-

ants had made no contributions on his behalf.

The special master relied upon common-law agency principles in making his determination on this issue. Defendants agree with that reliance, but disagree with the special master's ultimate conclusion that Atkinson was an employee. The court also agrees that the common law of agency must determine this issue. *See NLRB v. United Insurance Co. of America*, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); *Ward v. Atlantic Coast Line R. R.*, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960) (relying on the *Restatement of Agency* 2d); SMR 10 n.3.

As the Supreme Court has stated:

> There are innumerable situations which arise in the common law where it is difficult to say whether a particular individual is an employee or an independent contractor .... In such a situation as this there is no shorthand formula or magic phrase that can·be applied to find the answer, but all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. What is important is that the total factual context is assessed in light of the pertinent common-law agency principles.

*NLRB v. United Insurance Co. of America*, 390 U.S. at 258, 88 S.Ct. at 990–91.

■ After examining the factors the special master relied upon, the facts defendants offer in opposition to his finding, and pertinent authority, the court is convinced that the special master's conclusion that Atkinson was an employee is correct.

In reaching that conclusion, the special master relied upon the following:

1.  Defendants "had almost sole discretion over the jobs on which Atkinson worked."

2.  "Atkinson was not in a separate business or occupation but instead was engaged in the performance of the principal business activity of his employer."

---

1.  Defendants' objections, discussed below, are to three of the master's conclusions of law.

3. Defendants supply the tools, office and supporting business structure for Atkinson, and the only place of business for defendants and Atkinson is Griffin's home.

4. The relationship between Atkinson and defendants is of long duration, and virtually exclusive of other employment by Atkinson.

5. Even though Atkinson's work requires a great deal of skill, and the level at which he is working within his craft indicates that he might be expected to work with a minimum degree of supervision, Griffin did exercise some supervision over Atkinson's work within his craft. Furthermore, "there is no evidence that Atkinson possessed the additional skills necessary to operate the business of providing tractor operators for the construction trades."

6. Atkinson was "totally dependent upon Griffin" in regard to such concerns as bookkeeping, billing, tax returns, unemployment and worker's compensation and work scheduling.

7. Atkinson's pay was computed based on hours of labor, "and, unlike the true independent contractor which Griffin occasionally utilized, Atkinson did not have to bear any risk of collection from the customer."

(SMR 10–11.)

Under formulations set out by both the federal and Georgia courts, the court has no difficulty characterizing Atkinson as an employee. In *Hayes v. Morse*, 474 F.2d 1265, 1266 (8th Cir. 1973), the court stated: "The essential characteristics of master and servant relation is the retention by the employer of the right to *direct* and *control* the manner in which the work shall be performed." (Emphasis in original.) The Georgia Supreme Court has held that:

The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.

*Fidelity & Casualty Co. of New York v. Windham*, 209 Ga. 592, 593, 74 S.E.2d 835 (1953). The facts found by the special master certainly place Atkinson's employment within the scope of that test.

An examination of factors relied upon in similar cases supports this court's acceptance of the special master's conclusion. In *NLRB v. United Insurance*, 390 U.S. at 258–59, 88 S.Ct. at 990–91, some of the "decisive factors" the Supreme Court used to find the company's "debit agents" to be employees were:

[T]he agents do not operate their own independent businesses, but perform functions that are an essential part of the company's normal operations; ... they do business in the company's name with considerable assistance and guidance from the company and its managerial personnel ... and the agents have a permanent working arrangement with the company under which they may continue as long as their performance is satisfactory.

The recent case of *Richardson v. Central States, Southeast & Southwest Areas Pension Fund*, 645 F.2d 660 (8th Cir. 1981)—also an ERISA case—held a truck driver an employee rather than an independent contractor of a van company for the purpose of determining his eligibility for pension benefits. The court relied, *inter alia*, on the following: "While Richardson owned the tractor unit, it was licensed to the Company and bore the Company's colors ... [and the company] controlled assignments, booked shipments [and] collected payments" for Richardson. *Id.* at 662.

In contrast, in *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980), *cert. den.* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), another ERISA case, the court held that a pension fund's finding that Wardle was an independent contractor

"was not arbitrary or capricious or erroneous as a matter of law," *id.* at 826, based on the following factors:

1.  "Wardle purchased his tractor *without any assistance* from [one of the purported employers in the case]." [2] *Id.* (emphasis added).
2.  "Wardle was paid on the basis not of time worked but of mileage and revenue." *Id.*
3.  "Lovelace did not withhold Federal income tax or Social Security taxes on Wardle's behalf." *Id.* at 826–27.
4.  "Wardle made worker's compensation and unemployment contributions himself." *Id.* at 827.

Comparing the facts of *Wardle* with those here supports the special master's conclusion on this point. The special master found (Finding of Fact XIV), that "Griffin deducts withholding tax and Social Security from Atkinson's wages as though he were an employee," that he "pays the workmen's compensation on Atkinson and also carries the liability insurance," and that he "also pays in on the unemployment compensation." (SMR 6.)

Defendants' argument contesting the special master's conclusion merely offers other facts that defendants believe justify characterizing Atkinson as an independent contractor. Although the court notes that many of these elements are relevant to the master's conclusion, the court finds that, on balance, these factors do not tip the scales in defendants' favor. These factors may well show that Atkinson's position "falls between pure employee and pure independent contractor status," *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d at 826. They do not, however, persuade the court that the special master's finding "is not the truth and right of the case." *General Plywood Corp. v. Georgia-Pacific Corp.*, 362 F.Supp. 700, 704 (S.D.Ga.1973), *aff'd* 504 F.2d 515 (5th Cir.

1974) (citation omitted). Indeed, in several cases the factors defendants advance were present, but the court or the NLRB nonetheless ruled that the persons in question were employees.

For example, in *Tryon Trucking Co.*, 192 NLRB 764 (1971), the NLRB held that drivers were employees despite their right to refuse a load or a "backhaul" from the trucking company. Here, defendants argue that "Atkinson does not have to work on a job he does not want to take, and on several occasions has rejected jobs offered to him by Mr. Griffin" (DB 4). However, in *Tryon*, when the NLRB compared that factor to the trucking company's performance of all dispatching services and determination of the method and amount of the percentage pay system involved, it nonetheless held the drivers employees. *See also Cement Transport, Inc.*, 162 NLRB 1261 (1967) (fact that truck owner may earn additional money through other business activity, although a factor to be considered, does not preclude an employee relationship); *Steel City Transport, Inc. v. NLRB*, 389 F.2d 735 (3d Cir. 1968).

*Reisch Trucking & Transportation Co.*, 143 NLRB 953 (1963), 53 LRRM 1457, cited by defendants in support of their argument, is distinguishable from the instant case on its facts. There the NLRB, in holding that owner-drivers of various leased trucks were employees and not independent contractors, found, *inter alia*, that the truck owners had bona fide and absolute ownership of the trucks (as opposed to the rather tenuous basis of ownership defendants assert here), and that the company did not withhold income or social security taxes or pay worker's compensation for the drivers in question, as defendants did here.

■ Finally, defendants point out that the special master found that "the only evidence available suggests that Griffin honestly believed that Atkinson was an in-

---

**2.** Here, defendants point out that "[a]lthough defendants may have made all payments on the tractor, Mr. Griffin considers Mr. Atkinson to be a 50% owner, 50% of the tractor having been a 'gift' to Atkinson in return for his oper- ating the tractor for his share." Defendants' Brief in Support of Objections to Special Master's Report (hereinafter "DB"), p. 3. This is hardly the degree of "independence" exhibited in *Wardle*, however.

dependent contractor, and this was why he failed to report him on his contribution statements" (DB 6). Neither the court nor the special master question defendants' good faith. However, "[t]he parties' characterization is but one factor to be considered among others," *Ward, supra*, 362 U.S. at 400, 80 S.Ct. at 792, and "[s]elf-serving statements concerning how an individual is characterized, unrelated and [here, for the most part] unsupported by the actual working relationship, falls well short of the mark." *Richardson, supra*, 645 F.2d at 660.

For all of these reasons, the court holds that the special master's determination on the employee/independent contractor issue (a mixed question of fact and law) was correct, and hereby ADOPTS same. The delinquency amount of $4,500.02, based on the audit offered by both parties and computed by the master, also is ADOPTED. The court DIRECTS the corporation to pay the sum of $2,129.56 to plaintiffs, and DIRECTS the proprietorship to pay the sum of $3,370.46 to plaintiffs.

### Liquidated Damages and Pre-Judgment Interest

Defendants object to the master's recommendation of an award of pre-judgment interest to the Health and Welfare Fund and the Apprenticeship Fund, asserting that such an assessment is a "penalty" that they should not be compelled to pay.

■ The court finds that the master's recommendations on prejudgment interest are correct, and hereby ADOPTS same. As stated by the district court in *Central States Southeast & Southwest Areas Pension Fund v. Hitchings Trucking, Inc.*, 492 F.Supp. 906, 909 (E.D.Mich.1980) (action by pension fund against employer to recover contributions claimed to be due on behalf of employees):

Interest is not a penalty and a court should not consider the good faith or bad faith of the parties in deciding whether to award interest or what amount to award. Interest is awarded simply because a party who has had possession and use of a certain sum of money for a certain period of time is determined not to have been entitled to that possession and use. The interest award is no more than compensation for the lost use of the principal sum for the time period that the money was not in the possession of the proper party.

*See Employer-Teamsters Joint Council No. 84 v. Weatherall Concrete, Inc.*, 468 F.Supp. 1167, 1171 (S.D.W.Va.1979); *see also Laminoirs-Trefileries-Cableries de Lens, S. A. v. Southwire Co.*, 484 F.Supp. 1063 (N.D.Ga. 1980) (Tidwell, J.).

The court determines that plaintiffs are entitled to prejudgment interest as follows: the Health and Welfare Fund is awarded interest at the rate of 1 percent above the prime rate prevailing at the time the contribution for Atkinson was due, limited to a maximum of 10 percent of the total amount of the delinquency; the Apprenticeship Fund is awarded 8 percent interest computed from the date each amount on behalf of Atkinson was due.

■ The master also concluded that, under the trust agreement, plaintiff Health and Welfare Fund was entitled to recover its pro rata share of the audit costs incurred in this action. (SMR 14.) Since the master did not award liquidated damages to that fund (SMR 13), this award of audit expenses falls under the rubric of "costs". Since costs are recoverable under 29 U.S.C. § 1132(g)(1), the court will allow the Health and Welfare Plan to recover these costs. *Huge v. Reid*, 468 F.Supp. 1024 (N.D.Ala. 1979), *aff'd*, 615 F.2d 916 (5th Cir. 1980).

■ Defendants also argue that the liquidated damages for plaintiffs provided for in the trust agreements and recommended by the master should not be awarded because these liquidated damages also represent a "penalty" to defendants, and because the actual damages are readily ascertainable.

Plaintiffs' main argument in support of the master's recommendation on this issue centers around Congress's amendment of 29 U.S.C. § 1132 in 1980 to provide for awarding liquidated damages in cases of "delinquent contributions" (29 U.S.C. § 1145) to multi-employer pension plans.

That amendment did not become effective until September 26, 1980, almost three years after this action was filed and after the non-jury trial had been conducted, and Congress did not intend that provision to apply to cases filed prior to the amendment. Moreover, the complaint was never amended to include section 1145 as a basis for relief. For this reason, the court is not bound to follow the amended portions of section 1132. Indeed, plaintiffs do not argue that the court should be bound by the amended section, but rather they argue that the court should recognize the policy behind Congress's amendment.

Section 1132 as amended provides in relevant part:

> In any action under this sub-chapter by a fiduciary or for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —. . . (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) [of the amount of unpaid contributions] . . . .

29 U.S.C. § 1132(g)(2)(C) (emphasis supplied).

The master recommended an award of liquidated damages to two of the pension funds. In accordance with that recommendation, the court will award liquidated damages to the Central Pension Fund of 10 percent of the amount due for the benefit of Atkinson. This amount represents consequential damages to the fund caused by the cost of administration of benefit funds being "increased to the detriment of the beneficiaries by delinquencies" and appears to include a pre-judgment interest element. (SMR 13.) Since the master did not specifically designate the amount of interest in his award, and since 10 percent is a reasonable allowance, the court hereby ADOPTS the master's recommendation for the Central Pension Fund. The court notes parenthetically that it would have allowed a similar award on the basis of pre-judgment interest alone, and it therefore does not believe that defendants have been unjustly penalized by this award.

However, the court declines to adopt the master's recommendation that the court award as liquidated damages 10 percent of the total amount due to the Apprenticeship Fund. That fund shall recover its pro rata share of the audit expense (as did the Health and Welfare Fund), but the court is not convinced that awarding both liquidated damages and interest is justified here. As emphasized above, amended section 1132(g)(2) provides for interest or liquidated damages awards in these circumstances. Recovery here of interest alone is sufficient to fully compensate plaintiffs. A double recovery of liquidated damages as well as interest would constitute a penalty to defendants not sanctioned by that statute.

### Attorneys' Fees

The master recommends that the court award plaintiffs attorneys' fees in this action. Defendants argue that the court should deny attorneys' fees to plaintiffs. In the alternative defendants argue that any fees awarded to plaintiffs should be offset by fees defendants incurred in successfully opposing certain of plaintiffs' claims, or that the court should only award fees to plaintiffs for those hours spent prosecuting their successful claims, and not for the entire case as recommended by the master.

The master supports his fee recommendation on the ground that "the litigation involving Landers which did not result in a recovery for the fund nevertheless has brought to light an improper practice by the defendants which presumably now will be ended", and that, therefore, "[t]he funds have benefited from the litigation." (SMR 14–15.)

Defendants urge the court to rely upon *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and the attorney fee award guidelines set forth there. The court recognizes that although *Johnson* involved Title VII of the Civil Rights Act of

1964, the Fifth Circuit has held that its standards are not limited to such cases, but rather they "govern the assessment of fees in general." *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73, 77 (5th Cir. 1977); *Henson v. Columbus Bank & Trust Co.*, 651 F.2d 320 at 330 (5th Cir. 1981). However, in *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266–67 (5th Cir. 1980), the Fifth Circuit set out a separate set of guidelines to be used in deciding attorney's fees under 29 U.S.C. § 1132(g), without reference to *Johnson*. Therefore, the court is compelled to award attorneys' fees in accordance with the *Bowen* guidelines.

No single *Bowen* factor is necessarily dispositive in calculating a fee award. However, viewed "together [they] are the nuclei of concerns that a court should address in applying section 502(b)." *Id.* at 1266. These criteria are:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

*Id.* Since section 1132(g) provides for awards to either party, the court will deal with each of these factors in turn for both parties, where applicable.[3]

### Culpability or Bad Faith

As the court indicated above, it is persuaded that defendants made an honest good-faith mistake as to Atkinson's employment status. Moreover, they successfully defended against plaintiffs' allegations of fraud.

Plaintiffs also have demonstrated good faith in bringing this action on behalf of their respective trust funds.

### Ability to Satisfy an Award of Attorneys' Fees

Although the court has not seen the parties' financial records, the court recognizes that defendants' business is a small family firm, not a large corporation with unlimited resources. After paying the judgment, interests, costs and their own attorneys' fees, defendants will already have expended a significant sum of money before any grant of attorneys' fees to plaintiffs.

Plaintiffs, on the other hand, represent fairly large trust funds that apparently have sufficient funds to satisfy an award to defendants.

### Benefit to All Participants of an ERISA Plan or to Resolve a Significant Legal Question Regarding ERISA Itself

The benefit to the prevailing plaintiff plans is obvious. The court discerns no "significant legal question" since the litigation followed a fairly well-trod path and merely required a determination based on facts peculiar to this situation.

### Relative Merits of the Parties' Positions

Since all parties prevailed on some of the issues involved, and had reasonably meritorious claims or defenses for the issues on which they did not prevail, this factor is a "wash".

As a final consideration, the court has examined the issue of plaintiffs' fiduciary duties to bring this action, as suggested by *Bowen. Id.*

After an examination of the relevant statutes, the court does not find any specific duty plaintiffs would have violated had they not brought this action. *See* 29 U.S.C. §§ 1101–1114. The court recognizes, of course, that plaintiffs are responsible generally for seeing that contributions to their plans are properly made. However, where, as here, "the fiduciaries rather than the plan are financing the suit … [this] may indicate that their duties did not require them to bring suit." *Id.* at 1267.

---

**3.** As indicated above the court will apply section 1132(g) as it existed prior to amendment.

After careful weighing of all these factors, the court concludes that each party should be responsible for its own attorneys' fees and that an award of attorneys' fees for either side is not justified under *Bowen.* *See Bonar v. Barnett Bank of Jacksonville,* 488 F.Supp. 365, 370 (M.D.Fla.1980) (denying attorneys' fees to prevailing party in ERISA action where "resolution of the instant case turned primarily upon questions of law upon which reasonable minds could differ"); *United Ass'n of Journeymen v. Myers,* 488 F.Supp. 704, 716 (M.D.La.1980), *aff'd* 645 F.2d 532 (5th Cir. 1981) (requiring each party to pay own attorneys' fees where ERISA issues were, *inter alia,* "certainly ... not free of doubt"). *Cf. Hitchings Trucking, supra,* 492 F.Supp. at 910 (awarding plaintiff attorneys' fees for successful claims and defendant attorneys' fees for successful defense against other claims).

Accordingly, the court, in its discretion under section 1132(g), declines to adopt the master's report with respect to this issue and DENIES all attorneys' fees requests in this action.

### Summary

In sum, the court GRANTS plaintiffs' motion to adopt and hereby ADOPTS the master's report with respect to all issues except the following:

The court DENIES the award of liquidated damages to the Apprenticeship Fund, but GRANTS said Fund an award for its pro rata share of the cost of the audit. The court also DENIES all requests for attorneys' fees. Each party shall bear its own costs except as otherwise provided herein.

Counsel are DIRECTED to confer within twenty (20) days and submit to the court a joint proposed judgment in accordance with this order. In the event that the parties are unable to agree on a proposed judgment, the master shall make a final recommendation to the court.